**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 13 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MELZENIA HAWKINS,

            Plaintiff-Appellant,

v.                                                          No. 96-5110

SHIRLEY S. CHATER,
Commissioner, Social Security
Administration,*

            Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 93-C-570-W)

---

Submitted on the briefs:

Paul F. McTighe, Jr. (Gayle L. Troutman with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellant.

Stephen C. Lewis, United States Attorney, Joseph B. Liken, Acting Chief Counsel, Region VI, Linda H. Green, Assistant Regional Counsel, Office of the

---

*        Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  The Commissioner has been substituted for the Secretary in the caption, in the text, however, we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision.

General Counsel, U.S. Social Security Administration, Dallas, Texas, for Defendant-Appellee.

_____

Before TACHA, EBEL, and BRISCOE, Circuit Judges.

_____

EBEL, Circuit Judge.

_____

Claimant Melzenia Hawkins appeals from a district court order affirming the Secretary's decision to deny her application for social security disability benefits.[1] We review the Secretary's decision on the entire record "to determine whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir. 1991).

Claimant alleges disability because of hypertension, arthritis, and depression.[2] Employing the Secretary's five-step evaluative sequence, see

_____

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

[2]    Claimant's application for disability benefits did not list depression as a cause of her disability. See R. Vol. II at 105. Because the evidence claimant submitted to the administrative law judge, however, showed a history of

(continued...)

-2-

Williams v. Bowen, 844 F.2d 748, 750-72 (10th Cir. 1988), the administrative law judge (ALJ) found claimant's impairments nonsevere, see 20 C.F.R. § 404.1521, and concluded at step two that claimant was not disabled, see 20 C.F.R. § 404.1520(c). Claimant challenges that determination as unsupported by substantial evidence in the record as a whole, arguing in particular that the ALJ failed in his duty to develop the record when he refused to order consultative physical and mental examinations of claimant.

It is beyond dispute that the burden to prove disability in a social security case is on the claimant. See Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir. 1991). However, unlike the typical judicial proceeding, a social security disability hearing is nonadversarial, see Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987), with the ALJ responsible in every case "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised," Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993); 20 C.F.R. § 404.944 (requiring the ALJ to "look[] fully into the issues"); see also Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J. concurring) (describing duty as one of inquiry, requiring the decision maker "to

---

[2](...continued)
prescriptions for anti-depressant medication, and because claimant testified that she was depressed, we consider the issue of depression to have been properly before the ALJ. See Carter v. Chater, 73 F.3d 1019, 1021-22 (10th Cir. 1996).

inform himself about facts relevant to his decision and to learn the claimant's own version of those facts"); cf. Social Security Ruling 96-7p at n.3 (assigning to the adjudicator the task of developing "evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists"); Social Security Ruling 82-62 (requiring the ALJ to develop and fully explain issue of whether a claimant retains the functional capacity to perform past work).

Against this background, claimant first argues that the ALJ should have ordered a consultative mental examination based on the evidence in the record of her depression. The record reveals the following evidence regarding claimant's depression: In April 1990, Dr. Alexander, claimant's treating physician in California, noted in a treatment log that claimant had "been depressed" and that he had prescribed Pamelor for nerves and depression. See R. Vol. II at 27. Subsequent notes from Dr. Alexander indicate that claimant continued to take Pamelor at least through May 1991, see id. at 27-28. The record contains no objective medical test results to verify claimant's depression.

The next mention of anything related to depression is a letter from Dr. Reed, a physician who treated claimant after she moved to Oklahoma from California, and who stated that "She was given Prosac [sic]." Id. at 34. Again, no test results appear in the record to confirm depression. Claimant and her sister

both testified at the hearing the claimant was depressed, <u>see</u> <u>id.</u> at 90, 98, and an agency interviewer noted that claimant "looked" depressed. There is no evidence that the agency interviewer was qualified to diagnose depression.

In rejecting claimant's allegation of disabling depression, the ALJ discounted her use of anti-depressant medication. He noted that one of the treating physicians who had given her anti-depressants was a family practitioner/OB-GYN and that the other physician, Dr. Reed, was an internist who "obligingly" gave her medication. <u>See</u> R. Vol. II at 51. He noted that neither physician reported objective findings or referred claimant to a mental health specialist. <u>See</u> <u>id</u>. He refused to credit claimant's subjective complaints of depression.

We need not decide whether the evidence outlined above relating to claimant's mental state would be sufficient to justify a remand for further development of the record because here there is a further opinion from Dr. Toner, a psychiatrist, dated January 10, 1991, who completed a psychiatric review technique form and was of the opinion that claimant had no medically determinable impairment. <u>See</u> <u>id.</u> at 169. Dr. Toner specifically stated that claimant suffers from "no medically determinable MI [mental impairment]," <u>id.</u> at 170, and that there was no indication of significant functional limitations on the basis of psychological problems, <u>see</u> <u>id.</u>

Although the ALJ inexplicably did not mention this report in his decision, the report is substantial evidence supporting the conclusion that claimant does not suffer from a severe mental impairment. Its presence in the record, coupled with the absence of any objective medical findings regarding claimant's alleged depression, justifies the ALJ's decision to discredit claimant's testimony and the fact of her use of prescribed anti-depressants. Given this state of the record, the ALJ was not required to order further psychological examination.

We turn now to claimant's medical history regarding her hypertension and chest pain. Claimant apparently began the social security disability application process in California, but her file was lost by the agency. See R. Vol. II at 109. What evidence does remain of claimant's medical history in California reveals that, in October 1990, under the treatment of Dr. Ridgill, claimant underwent an EKG which was reported as abnormal, see id. at 185, presumably because of nonspecific ST-T wave changes.[3] Dr. Ridgill's assessment at that time was hypertension with possible coronary artery disease. See id. The record of Dr. Ridgill's examination states the following:

"ELECTROCARDIOGRAM READING:

Normal sinus rhythm. Nonspecific STT changes. Mostly in the inferior leads and anterior leads changes are noted.

---

[3] There is no evidence in the record regarding what "nonspecific STT changes" mean or what they indicate in terms of heart function.

INTERPRETATION: Rule out ischemic heart disease."

See id. at 183. Although the ALJ did not comment on or attempt to interpret the significance of this notation, the Secretary cites this portion of the record to mean "ischemic heart disease was ruled out." See Appellee's Br. at 15 (emphasis added). In light of the entire record, however, we do not view Dr. Ridgill's ambiguous statement, "rule out ischemic heart disease," as supportive of the conclusion that such disease "had been ruled out." Rather, we believe that Dr. Ridgill was of the opinion that further testing would need to be done in order to rule out the possibility of ischemic heart disease. This interpretation is the only consistent one because Dr. Ridgill then proceeded to order further tests, specifically a treadmill exam. If Dr. Ridgill had already ruled out ischemic heart disease, such further testing would presumably have been unnecessary.

Despite the abnormal EKG, Dr. Ridgill was then of the opinion that claimant had no impairment-related physical limitations, see id. at 186, but that a treadmill exam was necessary for further diagnosis, see id. at 183. On two separate occasions claimant attempted to complete the treadmill test, but was unable to do so because her blood pressure was too high. See id. at 114, 145. No further tests were done to pinpoint claimant's cardiac problems.[4]

---

[4] In addition to the 1990 EKG result, there is a further notation in the record from Dr. Rose Taylor, in conjunction with her residual functional capacity

(continued...)

Sometime during the summer of 1991, claimant apparently moved to Oklahoma, where she was seen twice by Dr. Reed. On December 19, 1991, claimant again submitted to an EKG. While claimant's blood pressure at the time of the test was 130/70, the EKG was again abnormal. The report indicated that anteroseptal myocardial infarction could not be ruled out; that ST & T wave abnormality was again present; and that claimant had possible inferior ischemia. See id. at 35. Claimant was given Procardia and nitroglycerin ointment. There are no further tests in the record regarding claimant's heart condition.

The ALJ rejected claimant's contention that her heart condition constituted a severe impairment, concluding that the diagnoses of her two treating physicians were unsupported by objective medical evidence, see R. Vol. II at 50, and that claimant had failed to provide any other medical evidence to support her claim.

The difficult issue presented here, where the charge is that the ALJ has failed to develop the record by not obtaining a consultative examination, is to decide what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to

---

[4](...continued)
assessment, that claimant's EKG revealed something reacting in the poor category. R. Vol. II at 161. The writing is illegible, and so it is impossible to determine what part of claimant's EKG was "poor." A later illegible notation by a different physician also notes something "very poor" with regard to claimant's EKG. See id. at 178.

look further. We begin by acknowledging that the Secretary has broad latitude in ordering consultative examinations. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, see 20 C.F.R. § 404.1519a(b)(4), or where the medical evidence in the record is inconclusive, see Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir. 1993), a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.[5]

That these specific instances may require the use of consultative examinations is supported by agency regulations. Subsection (f) of § 404.1512 provides:

> (f) *Need for consultative examination.* If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.

20 C.F.R. § 404.1512(f). 20 C.F.R. § 404.1519a further provides:

---

[5]    We are not confronted here with a situation where evidence already exists, and the ALJ must simply take the appropriate steps to acquire it. See, e.g., Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996); Baker v. Bowen, 886 F.2d 289, 292 (10th Cir. 1989).

*(a)(1)(General).*  The decision to purchase a consultative examination for you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of your medical sources. . . .  Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.

(2) When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists.  We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.

(b) *Situations requiring a consultative examination.*  A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim.  Other situations, including but not limited to the situations listed below, will normally require a consultative examination:

(1) The additional evidence needed is not contained in the records of your medical sources;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3)  Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4)  A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, as we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

see also 20 C.F.R. § 416.919a; Standards for Consultative Examinations and Existing Medical Evidence, 56 Fed. Reg. 36,932, 36,941 (1991).

As is usual in the law, the extreme cases are easy to decide; the cases that fit clearly within the framework of the regulations give us little pause. The difficult cases are those where there is *some* evidence in the record or *some* allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling. How much evidence must a claimant adduce in order to raise an issue requiring further investigation? Our review of the cases and the regulations leads us to conclude that the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. See Diaz, 898 F.2d at 777 (refusing to remand for consultative examination where claimant had failed to present "objective evidence supporting the conclusion that he suffers from depression"). Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment. See Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996).

Ordinarily, the claimant must in some fashion raise the issue sought to be developed, see Henrie, 13 F.3d at 360-61, which, on its face, must be substantial, see Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. See Glass v. Shalala, 43 F.3d 1392, 1394-96 (10th Cir. 1994) (refusing to remand for further development of the record where the ALJ had carefully explored the applicant's claims and where counsel representing claimant failed to specify the additional information sought). In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.

The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. See Glass, 43 F.3d at 1396. The standard is one of reasonable good judgment. The duty to develop the record is limited to "fully and fairly develop[ing] the record as to material issues." Baca v. Department of Health & Human Servs., 5 F.3d 476, 479-80 (10th Cir. 1993).

This standard is consistent with our holding in Henrie, 13 F.3d 359. There, in a case decided at step four and involving the development of the record regarding the specifics of a represented claimant's past relevant work, we remanded for additional development of facts relating to the stress level involved in the claimant's former work as a negative stripper. See id. at 360-61. We noted that the ALJ must develop the record "consistent with the issues raised," id., even when a claimant is represented by counsel. See also Thompson, 987 F.2d at 1491-93 (ordering a consultative examination where medical record was inconclusive); Baca, 5 F.3d at 479-80 (remanding for further development of "material" issues raised by the record).

We also note that our standard is consistent with that in other circuits which have discussed the issue of an ALJ's duty to order a consultative examination. In Brock, 84 F.3d 726, the claimant had written a post-hearing letter to the ALJ alleging, for the first time, that he suffered from depression and the effects of past drug abuse and arguing that he should have received a

-13-

consultative examination. The court stated that "[a] consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." Id. at 728. Because the claimant's allegation was viewed as an unsupported and isolated comment, it was insufficient to raise the suspicion of a non-exertional impairment, and no remand was ordered.

In Cannon v. Harris, 651 F.2d 513 (7th Cir. 1981), the Seventh Circuit reviewed the case of a claimant who did not specifically allege alcoholism as a cause of her disability. Nevertheless, because of evidence elicited during the administrative hearing, the court held that, although insufficient by itself to support a finding of disability, the evidence of the claimant's alcohol use "was sufficient to raise an issue as to plaintiff's mental and psychological capacity to engage in substantial gainful activity," id. at 519, thus requiring a remand for further development of the record.

The Fourth Circuit has remanded where claimant was able to show that "the Secretary's decision 'might reasonably have been different had [evidence been developed, inter alia, regarding IQ tests and psychological tests] . . . when (her) decision was rendered." Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980) (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

In Currier v. Secretary of Health, Education & Welfare, 612 F.2d 594 (1st Cir. 1980), the claimant had been discharged by the Air Force because of mental problems and had been given a one hundred percent disability from the VA. He had been fired by his civilian employer as nonemployable, and there was evidence in the record that he had "a non-trivial psychiatric condition." Id. at 598. The ALJ's reliance on conclusory notes from a VA doctor was found to be an inadequate development of the record. The court stated:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the Secretary has recognized that she has certain responsibilities with regard to the development of the evidence, and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness. We emphasize that we do not see such responsibilities arising in run of the mill cases, but here appellant seems obviously mentally impaired to some degree . . . .

Id. at 598 (citations omitted). See also Morgan v. Sullivan, 945 F.2d 1079, 1082 (9th Cir. 1991) (remanding for development of evidence regarding onset date of claimant's mental problems where record was ambiguous).

While there are some cases requiring a stricter showing by a claimant asserting a claim of failure to develop the record, we view those cases as

-15-

distinguishable because, for the most part, they involve a claim that the ALJ failed to obtain existing medical records that the claimant later argues would have established disability. For example, Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995), involved claims that the ALJ, on his own initiative, had failed to obtain existing evidence. The court there required the claimant to prove prejudice by establishing that the missing evidence would have been important in resolving the claim before finding reversible error.

However, there is a difference between a claimant who argues that he or she should have been afforded a consultative examination, and a claimant who argues that there was already evidence in existence that the ALJ failed to uncover or procure. Where evidence is already in existence at the time of the administrative hearing, it may be appropriate to require the stricter showing exemplified in Shannon, 54 F.3d 484. It would not be reasonable, however, to expect a claimant to demonstrate that evidence from a consultative examination, which has yet to be administered, would necessarily be dispositive. As stated earlier, the ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.

On the record before us, we hold that claimant has presented sufficient medical evidence to warrant further investigation of her physical condition as it relates to her claim of disabling hypertension and chest pain. Although the ALJ stated that "Dr. Reed recorded no objective evidence of any impairment . . . and the only laboratory data he secured was an electrocardiogram which revealed nonspecific ST-T wave changes," see R. Vol. II at 50, as we have discussed above, Dr. Reed's EKG revealed more than that. His opinion that claimant may suffer from possible inferior ischemia, id. at 34, and the EKG report itself which stated that anteroseptal myocardial infarction could not be ruled out and that abnormal ST & T waves were present, see id. at 35, should have alerted the ALJ to the need for more testing, particularly with a claimant who had already had one abnormal EKG and had earlier, on two separate occasions, been unable to take a further treadmill exam because of high blood pressure.[6]

In order to meet the burden of proof at step two, a claimant must demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity. See 20 C.F.R.

---

[6] Although claimant's counsel at the outset of the hearing made a general suggestion that "new physical evidence" might be developed if the ALJ were to order psychiatric and physical examinations, see R. Vol. II at 76, that statement was so general and generic as to provide very little additional reason for the ALJ to order an examination of claimant's hypertension and heart problems.

§ 404.1520(c). A claimant's showing at level two that he or she has a severe impairment has been described as "de minimis." Williams, 844 F.2d at 751. Even under that nondemanding standard, however, we cannot say on the basis of this record whether claimant's impairment is severe or not severe without more medical information. On remand, the ALJ should further develop the record to determine the extent of claimant's hypertension and related heart problems and their impact on her ability to do work related activity. We note, for purposes of this limited remand, that substantial evidence supports the ALJ's determination that claimant's arthritis does not render her disabled, and we repeat our conclusion that the ALJ did not err in refusing to order a consultative mental examination of claimant.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED in part and REVERSED in part, and this case is REMANDED for further proceedings in accordance with this opinion.