**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 3 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JERRY C. NOEL,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 97-5182
(D.C. No. 95-C-1127-E)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before **TACHA**, **LOGAN**, and **LUCERO**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is

therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals from an order of the district court affirming the Commissioner's decision to deny plaintiff's application for supplemental security income (SSI). Plaintiff filed his SSI application in February 1989, alleging he was disabled by pain arising from a back injury he suffered in January 1985 while working as a plumber's helper. After an administrative hearing in December 1989, an administrative law judge (ALJ) concluded that plaintiff suffered from a severe impairment that prohibited him from returning to his past relevant work, which had been mostly heavy or very heavy. The ALJ further concluded, however, that plaintiff retained the residual functional capacity (RFC) to perform medium work and, therefore, was not disabled because he could perform other jobs in the national economy. Plaintiff appealed the ALJ's decision to the district court and then to this court. By order and judgment entered July 1, 1993, this court reversed the denial of benefits and remanded the action for further administrative proceedings. See Noel v. Shalala, No. 92-5211, 1993 WL 261890, at **3 (10th Cir. July 1, 1993).

On remand, a second ALJ conducted a supplemental hearing in September 1994 and considered further medical evidence submitted by plaintiff. The ALJ issued his decision on June 29, 1995, concluding that plaintiff could no longer perform his past relevant work, but that he retained the RFC for a full range of light work. Therefore, the ALJ concluded that plaintiff was not disabled because

-2-

he could perform other jobs in the national economy. When the Appeals Council denied review, the ALJ's June 1995 decision became the final decision of the Commissioner, which plaintiff now appeals.

Plaintiff raises three related challenges to the Commissioner's decision. First, he contends that the ALJ erred in not obtaining another consultative exam on remand to assess plaintiff's RFC. Second, he contends that, in the absence of such a consultative exam, the record does not contain substantial evidence to support the ALJ's conclusion that plaintiff can perform either the walking and standing requirements or the lifting and carrying requirements of light work. Finally, plaintiff argues that, because the record does not support the ALJ's conclusion that plaintiff can perform a full range of light work, the ALJ's conclusion that plaintiff can perform a significant number of other jobs in the national economy is not supported by substantial evidence.

We review the Commissioner's decision to determine whether the correct legal standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). "If supported by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed." Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 741 (10th Cir. 1993). "In evaluating the appeal, we neither reweigh the evidence

nor substitute our judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). The scope of our review, moreover, is "limited to the issues the claimant properly preserves in the district court and adequately presents on appeal[.]" Berna v. Chater, 101 F.3d 631, 632 (10th Cir. 1996).

The record shows that plaintiff injured his back in January 1985, while lifting a cast iron sink. At the time, plaintiff was working as a plumber's assistant, which the vocational expert (VE) testified was heavy, unskilled work as performed by plaintiff. Plaintiff was treated by several doctors from 1985 through 1987, while he had a pending workers compensation claim. Treatment notes from Dr. Yu, a neurosurgeon, reflect that plaintiff was disabled as of March 1985 due to a herniated disc in his lower back, which was causing low back pain and left-sided leg pain. Plaintiff underwent chemonucleolysis in February 1986, and subsequent examinations by Dr. Yu revealed improvement in plaintiff's condition. When Dr. Yu last saw plaintiff, on August 28, 1987, he noted that plaintiff "continues to have a sore back and pain in the left leg, but he can get around fairly well." Appellant's App., Vol. II at 115. Plaintiff's straight leg raising had increased considerably, and while he had some weakness in the distal

muscles of his left foot, there was no "atrophy or fasciculation."[1] Id. Dr. Yu recommended vocational rehabilitation for plaintiff, and had earlier indicated that locksmithing, in which plaintiff had expressed an interest, "may be a suitable job for him with his physical limitations."[2] Id. at 116. Dr. Yu stated that he was "not in favor of any more work ups, nor any consideration of surgical intervention," but he did recommend that plaintiff wear a back brace during the daytime. Id. at 115.

In January 1988, plaintiff received a lump sum payment of workers compensation benefits and used the money to buy a house. Thereafter, he said, he could not afford medical treatment. At the time of the first administrative hearing in December 1989, plaintiff had not sought treatment for his back since 1987. He had, however, been sent by the Commissioner to Dr. Singh for a consultative examination. Dr. Singh's notes of her April 1989 examination showed that plaintiff's range of motion in his lumbosacral spine was limited and painful, and that he had decreased sensation in his left lower extremities. Plaintiff also exhibited decreased general strength in his left lower extremities, which Dr. Singh

---

[1]     Fasciculation is "[i]nvoluntary contractions, or twitchings, of groups (fasciculi) of muscle fibers, a coarser form of muscular contraction than fibrillation." Stedman's Medical Dictionary, 567 (25th ed. illus. 1990).

[2]     The job of locksmith is performed at the light exertional level. United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles 696 (4th ed. 1991).

thought might be due to lack of effort because of pain, rather than a true lack of strength. Dr. Singh also noted that plaintiff's gait was slow.

After Dr. Singh submitted the report of her examination, two physicians examined the medical record to date and concluded that plaintiff's condition prevented him from performing his past work, but that he retained the RFC for less demanding work. Both of these reports reflected that plaintiff could still perform a full range of light work.

At the first administrative hearing, plaintiff testified that he had recently learned from his attorney of the availability of clinics that would treat indigent patients. Plaintiff stated that he had an appointment to see a doctor at the Oklahoma Medical School Clinic on January 15, 1990, and that he hoped "to get something done to my back and get some pain medication." Appellant's App., Vol. II at 40. Plaintiff also acknowledged that he was supposed to be wearing a back brace all the time, but said he was no longer wearing one. Likewise, he said he was not using a cane at present, though he had used one for some time in the past and thought he should get a new one.

Despite plaintiff's stated intention to seek treatment for his back after the hearing, the record before us reflects only a single visit on January 3, 1990, to Dr. Ferguson, a physician at the Broken Arrow Family Clinic. The only medical record from this visit is a brief letter, addressed "To Whom it May Concern,"

-6-

dated January 5, 1990. Dr. Ferguson expressed his opinion in the letter that plaintiff was "totally disabled from his previous job and without surgical intervention he is likely to remain that way," but he neither discussed his findings on examination nor suggested a course of treatment for plaintiff. Id. at 150.

The record contains no further evidence of medical treatment until after plaintiff's case was remanded to the agency by this court in July 1993. Then, between August and October 1993, plaintiff sought treatment on several occasions from Morton Comprehensive Health Services for his back pain and other maladies. On August 16, plaintiff was complaining of pain in his back and his right shoulder. Plaintiff was not on any medication at that time, so the physician prescribed 600 mg of ibuprofen three times a day and ordered x-rays of plaintiff's shoulder and lumbar spine. The latter showed "minimal degenerative changes" at the L2 and L4 vertebrae, but otherwise were unremarkable. Id. at 252. Plaintiff was still complaining of low back pain when he was seen on August 30, but his shoulder pain had resolved. Plaintiff was prescribed Motrin and told to return in one month.

Plaintiff returned to the clinic on September 17, complaining of back pain and ear pain for the past week. The physician noted that plaintiff had previously had "satisfactory (partial) pain control on Motrin," but that plaintiff had stopped taking the medication "because he heard it could damage kidneys." Id. at 248.

The physician also noted that plaintiff walked with a cane because, plaintiff said, his left leg "'gives out.'" Id. Plaintiff, however, exhibited a full range of motion and his gait was normal. Plaintiff was directed to take nonprescription-strength Motrin when needed, was given a prescription for an antidepressant, and was told to return to the clinic in two months.

Plaintiff was seen for dental services on September 21 and October 5, and was last seen on October 7, when his chief complaint was acute exacerbation of his chronic low back pain after sleeping in a recliner. Plaintiff reported that he had taken one Motrin and one Elavil (an antidepressant), which caused the pain to subside somewhat, but he thought a stronger dose of Elavil would help. Examination at that time revealed decreased motor strength and sensation in plaintiff's left leg. Plaintiff was given another prescription for an antidepressant and was told to have his blood pressure checked within the next three weeks. The record contains no further notes of any treatment, either at Morton or elsewhere.

At the supplemental administrative hearing on September 27, 1994, plaintiff discussed his daily routine and noted that he had been using a cane for the past five years when he was outside. He said he did not use the cane inside his house. Plaintiff also said that he had been taking Motrin for pain relief for the past year. When asked about his physical capabilities, plaintiff testified that he could walk one hundred feet without serious problem, he could stand about

twenty minutes and sit about forty-five minutes to an hour at a time, and he could lift about twenty pounds.

In his June 1995 decision, the ALJ noted that, because SSI payments are made no earlier than the application filing date, the question before the agency was whether plaintiff was disabled on or after February 27, 1989, the date on which he filed his application. Considering all the medical evidence before him, as well as plaintiff's testimony and that of the VE, the ALJ concluded that plaintiff's chronic back pain precluded him from performing his past work. The ALJ also concluded that plaintiff's pain limited his ability to do more than light work, which generally requires the ability to lift no more than twenty pounds at a time, to lift or carry up to ten pounds frequently, to stand or walk six out of eight hours in a day, and to stoop only occasionally. The ALJ found, however, that plaintiff's pain did not further limit his ability to do light work.

Plaintiff argues on appeal that the ALJ's determination that he retained the RFC for light work is not supported by substantial evidence, in the absence of a consultative examination specifically assessing plaintiff's RFC. Plaintiff's argument is flawed in several respects. First, plaintiff cites no Tenth Circuit authority for his contention that the ALJ's failure to obtain an examining physician's opinion of plaintiff's RFC was legal error, and we know of no such authority. Second, plaintiff's contention that this court concluded in the earlier

appeal that the Commissioner had "erred by neglecting to obtain an RFC assessment from an examining physician," Appellant's Br. at 15, is a misstatement of our earlier decision. We merely noted in that decision that Dr. Singh, the consultative physician, did not make an RFC assessment; we neither suggested that this omission created error nor directed the Commissioner to obtain an RFC assessment from a consulting physician on remand. Noel, 1993 WL 261890, at **3.

Finally, we have held that, "when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997). Therefore, unless counsel specifically identifies the issue(s) needing further development, "we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." Id. at 1168.

The record here contains medical assessments of plaintiff's RFC by two different nonexamining physicians, which reflect that plaintiff can perform light work. Subsequent medical records do not reflect restrictions on plaintiff's abilities beyond those noted in these RFC assessments. Further, the record reflects that the ALJ and plaintiff's counsel specifically discussed the reasons for

this court's earlier remand, but counsel never suggested to the ALJ that a further consultative examination was needed to assess plaintiff's RFC.[3]

Under the circumstances, we conclude that the ALJ had no duty to order another consultative examination and that the record supports the ALJ's conclusion that plaintiff retains the RFC to perform light work. Having so concluded, we necessarily reject plaintiff's third challenge to the ALJ's decision, which is based on the assumption that plaintiff cannot perform a full range of light work.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Circuit Judge

---

[3] Nor did counsel raise the need for a consultative examination in his lengthy letter to the Appeals Council challenging the ALJ's decision. See Appellant's App., Vol. II at 154-57.