**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LINDA FAYE STEADMAN,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security Administration,

      Defendant-Appellee.

No. 98-5067
(D.C. No. 96-CV-269-EA)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals the district court's decision affirming the Commissioner's denial of plaintiff's application for supplemental security income benefits. Plaintiff filed for benefits in September 1992, alleging she had been disabled since February of that year due to chest pain and headaches accompanied by numbness in her face and arm and blurred vision. After plaintiff's application was denied initially and on reconsideration, she requested and received a de novo hearing before an administrative law judge (ALJ). Plaintiff appeared at the September 21, 1993 hearing with her non-attorney representative. In response to the ALJ's questions, plaintiff testified that she was unable to work due to pain in her back, arms, and legs; she stated that without this pain, she would be able to work. In response to her representative's questions, plaintiff also acknowledged that she had suffered from periodic outbreaks of boils on her body for years. At a supplemental hearing on January 4, 1994, plaintiff again told the ALJ that she was unable to work only because of pain in her back, arms, and legs. In response to questions from her representative, plaintiff also said she had constant pain in her hands and she continued to suffer from outbreaks of boils.

The ALJ issued a lengthy written decision on October 14, 1994. Based on April 1993 x-rays showing minimal arthritic processes in plaintiff's right knee and degenerative joint disease of her thoracic and lumbar spine, the ALJ concluded that plaintiff had severe impairments at step two of the sequential

process.  See 20 C.F.R. § 416.920 (describing steps).  Despite her limitations, the ALJ concluded that plaintiff retained the residual functional capacity (RFC) for a full range of sedentary work.  While this RFC precluded plaintiff from returning to her past relevant work as a nurse's aide or motel maid, the ALJ concluded that plaintiff could perform other work in the national economy pursuant to the medical-vocational guidelines.  Therefore, the ALJ denied plaintiff's application for benefits at step five of the sequential analysis.  See id.

Plaintiff petitioned for review of the ALJ's decision before the Appeals Council and submitted additional medical records describing her treatment between December 1994 and November 1995.  The Appeals Council concluded that the new records did not provide a basis to alter the ALJ's decision.  On February 6, 1996, the Appeals Council denied plaintiff's petition for review and the ALJ's decision became the final decision of the Commissioner.  Thereafter, plaintiff appealed the Commissioner's decision to the district court, which affirmed the denial of benefits.  This appeal followed.

Plaintiff raises three challenges to the Commissioner's decision on appeal. First, she contends that the ALJ failed to make a proper credibility assessment. Second, she argues that the ALJ failed to develop the record by obtaining copies of hospital records that were brought to his attention during the proceedings.

Finally, she maintains that the ALJ incorrectly shifted the burden of proof to her at step five of the sequential analysis.

We review the Commissioner's decision to determine whether the correct legal standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). "If supported by substantial evidence, the [Commissioner's] findings are conclusive and must be affirmed." Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 741 (10th Cir. 1993). "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).

We turn first to plaintiff's challenge to the ALJ's credibility assessment. Under the familiar framework set forth in Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987), an ALJ assessing a claimant's allegations of disabling pain must first determine whether there is objective medical evidence of a pain-producing impairment. If the first step is met, the ALJ must then determine whether there is a nexus between the pain producing impairment and the claimant's subjective allegations of pain. See id. If the ALJ finds the necessary nexus, the ALJ must then consider all the evidence–both objective and subjective–and determine the credibility of the claimant's allegations of disabling pain. See id. In making the

required credibility assessment, the ALJ must link the conclusion to the evidence. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). While "credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence[,] . . . [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quotations and citations omitted).

Plaintiff contends that the ALJ's credibility determination was not sufficiently linked to substantial evidence in the record. While the ALJ's decision might have been organized more clearly on this issue, we think a close reading of his decision shows that he disbelieved plaintiff's allegations of disabling pain based on a variety of factors. First, he noted that plaintiff originally filed for benefits based on her chest pains and headache syndromes, but the medical records did not show many complaints of these problems after plaintiff filed her application. Instead, not long after she filed her application, plaintiff began to complain of a new set of problems, involving musculoskeletal pain in her back, arms, and legs. The ALJ noted that while x-rays showed some mild arthritic or degenerative changes in her back and knees, the medical adviser stated that these changes would not be expected to limit plaintiff's ability to perform all work.

The ALJ also discussed the contradiction between plaintiff's alleged functional restrictions and the findings of Dr. Cooper during his thorough examination of plaintiff in December 1992. Additionally, he noted that the medical records showed that plaintiff often sought treatment for ailments other than back, leg, or arm pain, and that she went for long periods without seeking any treatment at all. The ALJ also found that plaintiff failed to follow doctor recommendations that she lose weight and exercise to lessen the load on her musculoskeletal and cardiovascular systems, and he determined that she suffered no side effects from the medications she was taking for her pain.

Based upon our review, we conclude that the ALJ provided a sufficient link between the evidence and his determination that plaintiff's allegations of disabling pain were not credible. Moreover, we conclude that his credibility assessment is supported by substantial evidence in the record.

Plaintiff next challenges the ALJ's decision on the ground that he failed to obtain records from her brief hospitalization in late September 1993. After the September 1993 hearing, the ALJ reopened the record to submit written interrogatories to Dr. Andelman, a medical adviser. The ALJ gave plaintiff's representative an opportunity to submit his own interrogatories or to request a supplemental hearing at which he could cross-examine Dr. Andelman. In an October 28, 1993 letter to the ALJ, plaintiff's representative requested a

supplemental hearing and noted that plaintiff had been hospitalized since the last hearing. Accordingly, the ALJ scheduled a supplemental hearing for January 4, 1994.

At the beginning of the supplemental hearing, the ALJ asked plaintiff's representative whether there were any additional documents that he wanted to have made part of the record, and he said there were not. Thereafter, the ALJ questioned the plaintiff at some length, and elicited from her information concerning her recent hospitalization. She testified that she had awoken one morning with pain in her chest and arm and had gone to the hospital, where she was placed on a heart monitor and kept overnight. Plaintiff's representative did not ask plaintiff any other questions about the hospitalization, nor did he submit any records from this visit, though he subsequently supplemented the record with numerous other medical records. Plaintiff now claims that because the ALJ knew about the hospitalization, he should have obtained the records when plaintiff's representative failed to submit them.

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997). Nonetheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the

issues raised." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993). Generally, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). The degree of effort required by the ALJ to develop the record, however, varies from case to case. Cf. Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994) (noting that whether ALJ has adequately developed record must be determined on case by case basis); Lashley v. Secretary of Health & Human Servs., 708 F.2d 1048, 1052 (6th Cir. 1983) (same).

Here, although plaintiff originally complained of disabling chest pain in her application for benefits, she did not mention chest pain as part of her disabling condition at either the September 1993 or the January 1994 hearing before the ALJ. Plaintiff's treatment records did not reflect any complaints of chest pain after December 1991, and when Dr. Cooper examined her in December 1992, she did not mention any problem with chest pains until specifically asked about it, at which point she indicated that they did not bother her anymore.

The record shows that plaintiff's representative was advised in writing that he needed to gather and submit medical evidence to the ALJ. In addition, the ALJ specifically asked plaintiff's representative at both the September 1993 and the January 1994 hearings if there were any other documents he desired to have made

part of the record. Plaintiff's representative never indicated that he wanted to submit any information concerning plaintiff's hospitalization, beyond her testimony, nor did he ask the ALJ's assistance in obtaining the hospital records. Plaintiff's representative did, however, submit numerous other medical records to the ALJ after the supplemental hearing. Thus, the ALJ could reasonably assume that plaintiff's representative purposely chose not to submit the hospital records, perhaps because they were of only minor importance. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (concluding that plaintiff's failure to submit medical records of recent treatment suggested that the alleged treatments had only minor importance).

Moreover, plaintiff has never provided the missing hospital records to the Appeals Council, the district court, or this court, to establish that the record before the ALJ was not adequately developed. Nor has she indicated how the ALJ's review of these missing records would have affected his decision to deny benefits. See Hawkins, 113 F.3d at 1169 (concluding that when the missing evidence was in existence at the time of the administrative hearing, it may it may be appropriate to "require[] the claimant to prove prejudice by establishing that the missing evidence would have been important in resolving the claim before finding reversible error") (citing Shannon, 54 F.3d at 488). Under the circumstances, we conclude that the ALJ did not commit reversible error when he

failed to obtain records from plaintiff's overnight stay at the hospital in late September 1993.

Plaintiff's final challenge to the ALJ's decision is rather unclear. While the caption in her appellate brief and the first few sentences thereunder suggest that she thinks the ALJ did not correctly put the burden of proof on the Commissioner at step five of the sequential analysis, plaintiff does not tie this proposition to the facts in any manner. Instead, she makes the following two disjointed statements. First, she states: "The ALJ's failure to obtain hospital records related to Ms. Steadman's chest pain cannot affirmatively support a conclusion that her chest pain was not significant." Appellant's Br. at 20. Then, she states: "The ALJ's failure to properly consider Ms. Steadman's nonexertional impairments created an underlying flaw which tainted the remainder of his analysis, in that he failed to obtain vocational testimony concerning the impact of these alleged impairments on Ms. Steadman's ability to work."     Id. at 20-21. Plaintiff does not explain what nonexertional limitations the ALJ allegedly failed to properly consider.

We have previously concluded the ALJ did not commit reversible error by failing to obtain the hospital records relating to plaintiff's September 1993 episode of chest pain. Moreover, these hospital records were not the only evidence concerning plaintiff's chest pain in the record, and the ALJ was able to

assess the effects of chest pain on plaintiff's ability to work from the other evidence. To the extent plaintiff contends that her chest pains constitute a nonexertional limitation and that the ALJ failed to properly consider it, we reject this contention based upon our review of the record.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge
