**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 24 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

WAYNE C. HANSON,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL,

      Defendant-Appellee.

No. 98-5127
(D.C. No. 96-CV-1100-EA)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Wayne C. Hanson appeals from the district court's decision affirming the Commissioner's denial of his applications for Social Security disability insurance benefits and Supplemental Security Income benefits. We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

Hanson was apparently diagnosed with non-insulin dependent diabetes mellitus in 1989, although the record contains no medical evidence of his diabetes (or any other medical condition) prior to August 1993. Hanson applied for benefits in October 1993 claiming disability since August 1991 primarily due to fatigue and other limitations imposed by his diabetes. Because his insured status expired on December 31, 1992, he had to be found disabled by that date to be entitled to disability insurance benefits under Title II of the Social Security Act. *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

Following a hearing in August 1994, an administrative law judge determined that Hanson was not disabled. The ALJ found that he was severely impaired by diabetes with mild neuropathy, and that he could not perform his past relevant work as a welding and manufacturing engineer and electrical mechanic,

which was performed at the medium exertional level. The case thus proceeded to step five of the five-step process for determining disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that despite his diabetes, Hanson could still perform the full range of light work restricted only by an inability to climb. Relying on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 202.15, 202.05, and 202.07, and the testimony of a vocational expert, the ALJ found there were other jobs available Hanson could perform and thus was not disabled. After considering additional evidence submitted by Hanson, the Appeals Council denied review, thus making the ALJ's decision the final decision of the Commissioner.

On appeal, Hanson raises three related arguments. First, he contends that the ALJ failed to comply with 20 C.F.R. § 404.1512(d)(2) and obtain medical records covering the period relevant to his Title II claim, that is, from the date of his application for benefits to the time his insured status expired. As a result, he contends, the ALJ did not have the evidence necessary to meet the Commissioner's step-five burden of showing he retained the functional capacity to work. Second, he contends that the ALJ's determination with respect to his SSI claim that he could perform nearly the full range of light work is not supported by substantial evidence because there is insufficient evidence he could perform the standing requirement of light work, especially in light of the

additional evidence he submitted to the Appeals Council. Third, Hanson claims that in affirming the ALJ's decision, the district court failed to apply the correct step-five burden.

Hanson's first contention begins with what is essentially a duty-to-develop argument. A claimant is responsible for furnishing medical evidence of claimed impairments, *see* § 404.1512(a), (c), but the Commissioner also has the duty to ensure that an adequate record is developed relevant to the issues raised, *see Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Consistent with this duty, 20 C.F.R. § 404.1512(d) states that the Commissioner will make "every reasonable effort" to help a claimant get records from his or her medical sources.

On the disability report Hanson filed when applying for benefits, which asked him to identify doctor, hospital and clinic treatment related to his claimed impairments, he did not identify any treatment for any alleged impairment prior to August 1993. *See* Appellant's App. Vol. II at 136-38. The ALJ was well aware of the lack of medical evidence covering Hanson's insured period from the application date to the date Hanson's insured status expired, and stated to Hanson's counsel at the close of the hearing:

> As I reviewed the file I seem to have, see a problem area or a
> potential problem area, the date last insured, December 31st of '92.
> What I would like for you to help me on is help me to understand
> what evidence most strongly supports disability from the alleged
> onset date to the date last insured.

*Id.* at 79.  Counsel responded that "[t]hat's the evidence we're trying to obtain." *Id.* at 80.  Counsel apparently never did, at least he never submitted it, nor did he request assistance from the ALJ in obtaining the evidence.

Despite his failure to present any relevant medical evidence, Hanson contends that a medical history taken from Hanson in 1993 indicating that he had been "started on micronase by Dr. Sweeden in Grove, Ok." at some unknown time, *id.* at 167, and that he had eye surgery by Dr. Cole in 1992 at some unknown location, *see id.* at 170, should have prompted the ALJ to obtain the relevant records of these treatments.  As already noted, Hanson did not identify these treatments or doctors on his disability report.  Moreover, there is no indication that Hanson or his counsel has ever tried to obtain the medical records he claims the ALJ should have obtained, which casts considerable doubt on the relevance of the evidence and existence of any prejudice he may have suffered from the ALJ's not obtaining it.  *See Hawkins*, 113 F.3d at 1169 (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).  Given Hanson's failure to identify his medical providers for the relevant period, to provide the evidence himself or ask the Commissioner for assistance, and to show the relevance of any evidence he claims the ALJ should have obtained, we conclude he has not demonstrated the ALJ violated the duty to develop.

The second part of Hanson's Title II argument is that the absence of medical evidence from his insured period precluded the Commissioner from meeting his step-five burden of showing that he could still work despite his diabetes. This argument proves too much. Hanson had the burden of producing medical evidence showing the severity of his impairment, *see* 20 C.F.R. § 404.1512(a), (c); we have already rejected his contention the ALJ failed to adequately develop the record. As he recognizes, the record does not contain any relevant medical evidence. Only his own statements supported his claim that he had diabetes during this period, and there is no medical evidence of its severity. While with this absence of medical evidence, we are at a loss to explain how his Title II claim proceeded beyond even step two, *see id.* § 1528(a) (claimant's statements alone insufficient to establish existence of impairment); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988), [1] the ALJ did not err by not identifying evidence of Hanson's abilities in light of the unknown effect of a controllable impairment like diabetes. [2]

---

[1] In his decision, the ALJ did not segregate and separately analyze the two relevant periods--the Title II period and the subsequent SSI period. There is substantial evidence in the record for step-two purposes regarding the severity of Hanson's diabetes in the latter period.

[2] Although only directly relevant to his SSI claim, the ALJ found that Hanson had a lackadaisical attitude toward following the prescribed regimen for controlling his diabetes.

With respect to his SSI claim, Hanson argues that substantial evidence does not support the ALJ's finding that he retained the capacity to perform the standing required by the performance of light work, and that the district court failed to recognize that in this step-five case, the Commissioner has the burden on this issue. The ALJ noted that, although his doctor had restricted him to "nonweightbearing" activities for several months due to a foot ulcer, the doctor concluded that the ulcer had completely healed by December 1993. His doctors discussed foot care and orthotics with him, but never indicated there were any further limitations in his ability to stand or bear weight. The consultative medical examiner found that there was diminution of sensation in both feet, but that his gait was safe and stable. Hanson testified that he did yard work and could walk half a mile, and the ALJ found his credibility to be suspect and his assessment of his abilities to be understated. The evidence submitted to the Appeals Council regarding foot pain, spasms and numbness did not indicate any new or worsening symptoms. We conclude that substantial evidence supports the ALJ's finding regarding Hanson's capacity to do light work, and that neither the ALJ nor district court erred in applying the appropriate burden.

The judgment of the district court is AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Circuit Judge