**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT E. WILSON,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 02-7101
(D.C. No. 01-CV-454-P)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

I.

Plaintiff filed applications for disability insurance benefits and supplemental

security income with a protective filing date of January 16, 1998. Plaintiff

contends he has been disabled since December 17, 1997, due to pain in his back

and lower extremities, pain in his left knee, coughing spells, and shortness of

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

breath. An administrative law judge (ALJ) held a hearing on plaintiff's applications in October 1999 and issued a decision in January 2000 finding plaintiff not disabled. The ALJ found that plaintiff retained the residual functional capacity (RFC) for light work, limited by his ability to stoop only occasionally. The ALJ determined that plaintiff could not do his past relevant work, which he had performed at the medium and very heavy exertional levels, but that he could perform various light and sedentary jobs that exist in significant numbers in the national economy. When the Appeals Council later denied plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. The district court affirmed the Commissioner's decision, and plaintiff now appeals. [1]

Plaintiff raises two broad challenges on appeal: 1) the ALJ did not properly evaluate the medical evidence; and 2) the ALJ did not properly evaluate the credibility of plaintiff's subjective complaints. Our review of the Commissioner's decision is limited to determining whether the correct legal standards were applied and whether the findings are supported by substantial evidence in the record viewed as a whole. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "In evaluating the appeal, we neither reweigh the

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## II.

The record shows that plaintiff, who was then working in the oil fields as a driller, had a work-related accident in August 1997. In late November 1997, he began to complain of lower back pain radiating into his left leg. Plaintiff made numerous trips to the emergency room in the following months, where he received pain medications but no other treatment. In April 1998, he was evaluated by Dr. Bradley in connection with worker's compensation proceedings arising out of the accident. Based on x-rays of plaintiff's lumbar spine, which showed mild degenerative changes, and on the physical examination, which showed limited range of motion in his back, tenderness on palpitation, positive straight leg raising on the left, some weakness in the great toe extension on the left, and potential L5 hypesthesia on the left, Dr. Bradley recommended that plaintiff have an MRI.

The MRI showed "desiccation of his lower three lumbar discs with some bulging of each of the discs." Aplt. App. at 225. Dr. Bradley then recommended that plaintiff receive an epidural steroid injection and that the course of his future treatment be dependent on his response to the injection. If plaintiff had a good response, then Dr. Bradley recommended that plaintiff begin a progressive

exercise program. If plaintiff did not have a good response to the epidural, then Dr. Bradley recommended that plaintiff have an L4-5 left-sided laminotomy and microdiscectomy without fusion.

Plaintiff received the epidural steroid injection on May 5, but was not much better when he saw Dr. Bradley on May 13. Accordingly, Dr. Bradley requested that the worker's compensation court authorize plaintiff to have the back surgery as soon as possible. On May 20, plaintiff was examined by Dr. Howard at the request of the Social Security Administration. His examination revealed that plaintiff had a full range of motion in his shoulders, elbows, wrists and hands, as well as in his hips, knees, ankles and feet, except he could bend his knees only to 90° when lying on his stomach. Plaintiff had a limited range of motion in his spine. Nonetheless, plaintiff walked with a stable gait, he could toe walk and heel walk without difficulty, and he was able to walk down the stairs without using the handrail when leaving Dr. Howard's office.

On July 23, Dr. Rutledge performed the recommended back surgery, which revealed "a broad-based disc . . . with free fragments in the disc space. The nerve was free following the procedure, and [plaintiff] tolerated the procedure well." *Id.* at 251. Plaintiff was discharged from the hospital the next day. He was told to follow up with Dr. Rutledge in three weeks, but to contact the office immediately if he developed problems in the meantime. The record does not show that plaintiff

had reason to contact Dr. Rutledge before his follow-up appointment on August 17.

At the follow-up appointment, plaintiff said that he was "feeling pretty good." *Id.* at 250. He reported some numbness at the base of his spine when he sat up straight and some stiffness in his left leg, but he no longer had any left leg pain. After examining plaintiff, Dr. Rutledge was of the opinion that plaintiff was "doing satisfactorily," but that he might benefit from physical therapy consisting of a spine stabilization program and flexion and extension exercises. *Id.* Dr. Rutledge wrote a prescription to HealthSouth for three physical therapy sessions per week for a period of two or three weeks, noting that plaintiff's rehabilitation potential was good. The record contains an intake evaluation of plaintiff by HealthSouth, but does not contain any record of his physical therapy.

Plaintiff returned to see Dr. Rutledge on September 17, at which time he reported some pain in his left hip and some stiffness in his back. Dr. Rutledge observed that plaintiff had "some general limitation of motion in his back in all directions, but [there was] no evidence of muscle spasm." *Id.* at 248. Straight leg raising tests were negative on both sides and plaintiff no longer had any hamstring tightness. His gait was normal, as were his knee and ankle reflexes, and Dr. Rutledge did not detect any weakness when plaintiff flexed his feet.

Following the September 17 exam, Dr. Rutledge was of the opinion that plaintiff "ha[d] reached maximum benefit from medical care, but [would] have to exercise his back at least daily from now on. At the present time he could not return to work as a derrick hand." *Id.* at 248. Dr. Rutledge later drafted a letter for the worker's compensation proceedings in which he opined that plaintiff had sustained some permanent impairment from his back injury and surgery, which Dr. Rutledge estimated to be 10% of the body as a whole.

On October 28, plaintiff was examined by Dr. Metcalf at the request of his worker's compensation attorney. Dr. Metcalf found plaintiff had significant limitation of motion in his spine, as well as tenderness to palpitation and to extension and rotation. He reported that plaintiff had decreased sensation in his left calf, that his left calf was ½ inch smaller than his right, and that his straight leg raising test was positive on both sides. Dr. Metcalf was of the opinion that plaintiff had sustained a 40.5% permanent impairment to the whole body as a result of his back injury and surgery. Dr. Metcalf thought that plaintiff should be evaluated for vocational retraining.

On November 25, plaintiff was admitted to the hospital for bronchitis and discharged several days later. There are no medical records thereafter. At the hearing before the ALJ on October 20, 1999, plaintiff testified that he had not seen a doctor in about a year because he could not afford it. He said that he still had

pain in his back that would go into his left hip and left leg. He testified that when the pain got bad, he would take medication, and the pain would then "ease up a lot." *Id.* at 62. He also reported that taking hot baths or using ice packs helped the pain, as did lying on his side and curling up.

## III.

Plaintiff argues that the ALJ made several errors in evaluating the medical evidence. First, the ALJ did not mention plaintiff's numerous trips to the emergency room for pain medication between November 1997 and April 1998. Second, the ALJ gave too much weight to the opinion of Dr. Howard, who examined plaintiff in May 1998, before plaintiff had back surgery. And finally, the ALJ must have substituted his opinion for those of Dr. Rutledge and Dr. Metcalf, the only physicians to examine plaintiff after his back surgery, because the ALJ's RFC assessment was not consistent with those doctors' post-surgery reports. Rather than substitute his judgment for that of Drs. Rutledge and Metcalf, the ALJ should have ordered another consultative examination.

We have carefully reviewed the medical evidence of record as well as the ALJ's decision, and we find no reversible error in the ALJ's evaluation of the medical evidence. As to the first contention, plaintiff himself argues that evidence pre-dating his surgery is much less important than evidence post-dating his

surgery, and the emergency room visits to which he refers all occurred before his surgery. In light of the other pre-surgery evidence the ALJ discussed, his failure to include the emergency room visits for medication in that discussion is not reversible error. As to the second contention, the record does not suggest that the ALJ applied the wrong legal standards in weighing Dr. Howard's report. Plaintiff may be unhappy with the weight the ALJ gave that report, but we may not reweigh the evidence on appeal, *Casias* , 933 F.2d at 800. Finally, as to the third contention, the ALJ's RFC assessment does not appear inconsistent with the reports of Dr. Rutledge. While it is inconsistent with much of Dr. Metcalf's report, the ALJ gave adequate reasons for his decision to give little weight to Dr. Metcalf's report. Further, plaintiff's counsel made no request for a consultative examination after plaintiff's surgery. "In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Hawkins v. Chater* , 113 F.3d 1162, 1168 (10th Cir. 1997).

Plaintiff also contends that the ALJ made several errors in evaluating the credibility of plaintiff's subjective allegations of pain and limitation. He contends that the ALJ did not consider the record as a whole in assessing plaintiff's credibility, and, instead, relied on a mistaken view of the record and on plaintiff's demeanor at the hearing. "Credibility determinations are peculiarly the province

of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Again, our careful review of the record reveals no reversible error in the ALJ's assessment of plaintiff's credibility.

The ALJ acknowledged that his personal observations of plaintiff at the hearing did not constitute substantial evidence, but that they were entitled to some weight in the overall credibility assessment. Further, besides plaintiff's demeanor at the hearing, the ALJ stated that he gave particular weight to what he described as "marked discrepancies" between plaintiff's allegations and the information in the medical reports. Aplt. App. at 41. The ALJ described these discrepancies in some detail. Plaintiff essentially disagrees with the weight the ALJ gave to various facts. But again, we may not reweigh the evidence on appeal. The ALJ applied the correct legal standards in evaluating plaintiff's subjective allegations of pain and limitation, and his assessment of plaintiff's credibility is supported by substantial evidence in the record.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge