**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DALE R. DILLINER,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 99-5070
(D.C. No. 97-CV-580-J)
(N.D. Okla.)

ORDER AND JUDGMENT   *

Before **BALDOCK** , **BRISCOE** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Dale R. Dilliner appeals the judgment of the district court affirming the decision of the Commissioner of Social Security to deny his application for disability insurance benefits. After examining the record as a whole, we determine that the Commissioner's decision is supported by substantial evidence and adheres to correct legal standards. See Shepherd v. Apfel , 184 F.3d 1196, 1199 (10th Cir. 1999). We affirm.

Mr. Dilliner alleges that since he sustained a workplace injury in August 1992, he has been disabled due to back pain. At the hearing before the Administrative Law Judge (ALJ), claimant appeared unrepresented. He described his back problems and ensuant medical treatment, including a laminectomy performed on March 24, 1994. He also mentioned a vocal cord lesion, lymphatic tumors, hearing loss, vision difficulties, stiffness and soreness attributable to arthritis, and hypertension. A vocational expert also testified.

Based on the hearing testimony and a review of the medical records, the ALJ concluded that Mr. Dilliner "retaine[d] the residual functional capacity to perform a full range of sedentary work, to include lifting no more than ten pounds at a time and lifting/carrying more than occasionally articles like docket files, ledgers, and small tools, standing/walking no more than 2 hours in an 8-hour day, and not doing any significant stooping due to pain." Appellant's App. at 26. With this residual functional capacity (RFC), Mr. Dilliner could not return to his

-2-

previous occupation of meatcutter, which is heavy work. However, he could

perform his past relevant work as a union business agent, a sedentary position.

The ALJ therefore determined, at step four of the five-step sequential

evaluation process, that claimant was not disabled within the meaning of the

Social Security Act. See Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir.

1988) (discussing the five-step process). Mr. Dilliner disputes this conclusion,

arguing that the ALJ failed: (1) to fulfill the duty to develop the record for an

unrepresented claimant; (2) to portray his true physical limitations in the

hypothetical questions propounded to the vocational expert; and (3) to evaluate

properly his complaints of disabling pain. We address each of these contentions

in turn. [1]

---

[1] Under each of these three headings, appellant's brief raises a number of other, unrelated arguments. The common thread of these arguments is disagreement with the weight the ALJ gave to various physicians' opinions and medical reports. "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). We find no merit in any of Mr. Dilliner's scattered arguments. Specifically, we reject the contention that the ALJ gave undue weight to records compiled before the laminectomy was performed.

We note also the Commissioner's assertion that appellant's brief raises certain issues for the first time on appeal. For example, the Commissioner states that, in making the "duty to develop" argument to the district court, counsel claimed that the ALJ should have ordered a consultative examination of Mr. Dilliner's back. As discussed below, the argument made to this court is quite different.

(continued...)

**Duty to Develop**

The Commissioner has the duty to develop an adequate record relevant to the issues raised. See Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997). "This duty is especially strong in the case of an unrepresented claimant." Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996). A claimant is responsible, however, for furnishing medical evidence of claimed impairments. See 20 C.F.R. § 404.1512(a), (c). To require further investigation, a claimant must "make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Hawkins, 113 F.3d at 1167.

Mr. Dilliner asserts that the ALJ should have explored his responses to a Veterans Administration questionnaire included in his medical records. On that

---

[1](...continued)
> We caution counsel that this court has
>
> consistently rejected the argument that raising a related theory below is sufficient to preserve an issue for appeal. Changing to a new theory on appeal that falls under the same general category as an argument presented at trial or discussing a theory only in a vague and ambiguous way below is not adequate to preserve issues for appeal.

Okland Oil Co. v. Conoco Inc., 144 F.3d 1308, 1314 n.4 (10th Cir. 1998) (citations and quotation omitted). As a matter of judicial economy, however, we have chosen to address the issues as framed in appellant's brief, rather than sort through the record to ascertain the precise scope of the district court arguments.

form, Mr. Dilliner made checkmarks indicating that he has had a nervous breakdown and has undergone the "[r]emoval or loss of a finger, toe, arm or leg." Appellant's App. at 138. At the hearing, however, Mr. Dilliner did not allege a mental impairment and, other than one checkmark on one form, he presented no written evidence of a possible mental impairment. On the amputation issue, the record reflects that "at age fourteen [Mr. Dilliner] electively had his fifth toe amputated because it crossed over the others and [] it was painful when he walked." Id. at 171. For at least twenty-five years after the amputation, Mr. Dilliner engaged in substantial gainful activity without claiming that the loss of his toe affected his ability to work.

Mr. Dilliner also maintains that the ALJ should have obtained the full records of the physician who found that he was disabled under the terms of his former employer's pension plan. The physician's opinion, relating to an inability to function as a meatcutter, is included in the administrative record and was considered by the ALJ. In fact, the ALJ agreed that Mr. Dilliner could no longer perform the heavy work of meatcutter. The underlying records would not have shed significant light on Mr. Dilliner's ability to do the sedentary job of union business agent. This is particularly true in light of the extensive medical evidence submitted by other physicians.

Nothing in the record suggests a reasonable possibility of a severe, but unexplored, impairment requiring further investigation. Neither Mr. Dilliner's history nor his testimony implicate the ALJ's duty to develop the record by obtaining existing records or asking additional questions. Even taking into account the added burden that applies to an unrepresented claimant, the ALJ did not breach the duty to develop the record.

### Hypothetical Questions to the Vocational Expert

Mr. Dilliner argues that the hypothetical questions posed to the vocational expert did not accurately portray his physical limitations: specifically, his hearing loss, his vision difficulties, and his arthritis. At step four, the claimant bears the burden of proving he cannot return to his past relevant work, either as he performed it or as it is performed in the national economy. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). A step-four denial does not require a showing that the former job is available. Id. Also, it does not involve a calculation of the number of such jobs existing in the national economy. Cf. 20 C.F.R. §§ 404.1520(f), 404.1561 (requiring consideration of work existing in the national economy for a step-five determination).

The ALJ questioned Mr. Dilliner extensively about the demands of his work as a union business agent. See Appellant's App. at 38-42. He then turned to the

VE for her expert testimony. In response to the ALJ's hypothetical questions, the VE testified that the position is sedentary work which could be performed by a person who could lift no more than twenty pounds, frequently lift or carry ten pounds, and occasionally stoop. See id. at 60. On her own initiative, the VE stated that, for a person with "inability to sit and . . . difficulty with hearing and vision," the number of available sedentary jobs would be reduced. Id. Significantly, the VE did not opine that a person with all of Mr. Dilliner's claimed limitations could not meet the demands of the union position.

Thus, an attack on the completeness of the ALJ's hypothetical questions is misplaced here. Even if Mr. Dilliner's claimed limitations are fully credited, the record supports a finding that he had the physical and mental capacity to perform his past sedentary work as a union business agent. [2]

### Evaluation of Complaints of Disabling Pain

Finally, Mr. Dilliner challenges the ALJ's evaluation of his subjective complaints of pain. The ALJ cited and discussed the lack of objective medical evidence to support the degree or duration of the pain Mr. Dilliner alleged. The

---

[2] In this section of his brief, Mr. Dilliner adds another argument concerning the ALJ's step-four determination. He claims that the ALJ erred by failing to address the physical demands of the position of "business representative, labor union" as listed in the Dictionary of Occupational Titles (4th ed. 1991) (DOT). However, the DOT description of this position as usually performed in the national economy is consistent with the VE's testimony about the position. There was no need for an explicit mention of the DOT in the ALJ's decision.

ALJ also discounted Mr. Dilliner's complaints because his own testimony concerning his daily activities did not support a claim that he was unable to engage in all work activity. Mr. Dilliner walks about a mile a day, drives an automobile, and goes fishing for about two hours or longer. Appellant's App. at 20. See Gossett v. Bowen , 862 F.2d 802, 807 (10th Cir. 1988) (a finding of disability requires more than the inability to work without pain).

We conclude that the ALJ correctly applied the relevant legal standards. See Kepler v. Chater , 68 F.3d 387, 391 (10th Cir. 1995) (listing factors ALJ may consider in evaluating subjective complaints, including levels of medication and their effectiveness, extensiveness of attempts to obtain relief, frequency of medical contacts, nature of daily activities, subjective measures of credibility within the judgment of the ALJ, motivation of and relationship between claimant and other witnesses, and consistency of nonmedical testimony with objective medical evidence). We further find substantial evidence in the record supporting the ALJ's credibility findings.

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge