**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DON L. NORRIS,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 99-6167
(D.C. No. 97-CV-1613-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**  *

---

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Don L. Norris appeals from the denial of social security disability and supplemental security income (SSI) benefits. He argues that the administrative law judge (ALJ) failed at step four to make sufficient findings or to gather sufficient evidence to support her findings as to his vision and walking restrictions at all three phases of the analysis required by Social Security Ruling 82-62, 1982 WL 31386, and Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and reverse and remand the case for further proceedings.

The Claim for Benefits

Claimant was born on October 30, 1948. He dropped out of school in the tenth grade, and worked full-time for many years in various labor-type jobs. He held his last full-time job for twelve years, until he was fired on June 29, 1992. His attempts to work since then have been brief and unsuccessful. He claims that he ends up in pain after a few days and is unable to continue working. See Appellant's App. at 120, 124, 203.

Claimant filed his claim for benefits on September 20, 1993, alleging that he became disabled on September 6, 1993, due to severe lower back pain. See id. at 47. He explained that the pain is on the right side of his lower back and in his right hip and leg, and has progressed over time into numbness and tingling in his arms and hands. See id. at 59, 80, 86, 101, 109, 112, 124, 156, 162, 182, 195-96,

197, 208. He has spent time in a wheelchair or on crutches due to this impairment. See id. at 108, 203. On his September 23, 1993 disability claim forms, claimant also asserted that implants in both eyes limit his ability to work around machines, to do some heavy lifting or outdoor work, and to read small print. See id. at 96, 103. The agency did not take note of this second impairment immediately, but it eventually determined that claimant had undergone somewhat unsuccessful corneal implants in both eyes. See id. at 162. Claimant admitted past problems with drugs and alcohol. See id. at 70. At the hearing, he testified that he was also depressed. See id. at 202.

## The ALJ's Decision

The ALJ denied the claim at step four on the basis that claimant retained the RFC to return to any of four specific past jobs. See id. at 32, 33; see also 20 C.F.R. §§ 404.1520(e), 416.920(e). For this conclusion to be valid, the agency requires the ALJ to have made specific findings concerning: (1) claimant's RFC, (2) the functional demands of each of claimant's past jobs, and (3) claimant's ability to return to these past jobs with the RFC the ALJ determined the claimant to have. See Social Security Ruling 82-62, 1982 WL 31386, at *4; see also Winfrey, 92 F.3d at 1023 (summarizing three phases of agency's step-four analysis). The ALJ is bound by the agency's rulings, see 20 C.F.R. § 402.35(b)(1), and her findings must be supported by substantial evidence, see

-3-

Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289 (10th Cir. 1995).  "Although a reviewing court cannot weigh the evidence and may not substitute its discretion for that of the agency, it nevertheless has the duty to meticulously examine the record and make its determination on the record as a whole."  Dollar v. Bowen, 821 F.2d 530, 532 (10th Cir. 1987).

Phase One:  Claimant's RFC

The ALJ determined, in part, that claimant's depression was situational and not severe, and that his history of drug and alcohol use was also not severe.[1]  See Appellant's App. at 29-30, 33 (finding 4).  Claimant does not challenge these findings on appeal.  Otherwise, the ALJ found in the body of her decision that claimant could do medium work, except that he could not lift and carry more than fifty pounds, walk more than five to six blocks at a time, or sit for over one-half hour at a time.  See id. at 32.  She also found that claimant had "limited vision, especially in his right eye."  Id.  She restated the same limitations in her list of findings.  See id. at 33 (finding 6).  In support of the ALJ's RFC determination, the claimant testified that he can lift forty-five to fifty pounds, see id. at 198, sit for thirty minutes, see id. at 196, and walk five or six blocks, see id. at 205.

---

[1]     Because the ALJ found that claimant's substance abuse problem was not severe, he is not precluded from receiving benefits on that basis.  See 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

However, our review of the record shows that the ALJ's RFC findings are conclusory and insufficient.

### a. Claimant's RFC: Vision Impairments

The regulations require the ALJ to assess "impairment(s) of vision." 20 C.F.R. §§ 404.1545(d), 416.945(d). Claimant's vision was assessed in 1994 by the agency's physician, Dr. Raymond Dougherty. [2] He reported that claimant underwent a corneal transplant in his left eye in 1985, which was rejected, and in both eyes in 1986. See Appellant's App. at 162. He noted that claimant's best corrected vision in his left eye was 20/50, and that his left pupil was large, irregular, and nonreactive. See id. at 163. He also noted that claimant's best corrected vision in his right eye was worse than 20/200 and that he had strabismus. See id.

Dr. Dougherty did not note the significance of any of the abnormalities in claimant's eyes for his ability to perform functions related to work. See id. at 162-63. The ALJ made no inquiries along these lines at the hearing. See id. at 198. She recited in her decision that claimant's acuity was 20/50 in his left eye

---

[2]     Dr. Dougherty is not an ophthalmologist or optometrist. Rather, he is board certified in internal medicine and pulmonary disease. See Appellant's App. at 162. We therefore question whether Dr. Dougherty was qualified under the agency's regulations to assess claimant's vision limitations. See 20 C.F.R. §§ 404.1513(a)(1), (4); 404.1519g(b); 416.913(a)(1), (4); 416.919g(b).

and less than 20/200 in his right eye, see id. at 31, but found that he had "limited vision," without defining the implications of that limitation, id. at 32, 33. In fact, the ALJ stated that claimant had worked with his vision impairment before, implying that he could do it again. See id. at 31. Claimant did not claim to have a back impairment when he was still working full-time in 1992, however; he claimed that he became disabled in 1993. See id. at 47. The ALJ is required to assess claimant's impairments in combination. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The agency also requires that, "in assessing RFC for an individual with a visual impairment, the adjudicator must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace." Social Security Ruling 96-8p, 1996 WL 374184, at *6.

Claimant alleged in his claim for benefits that his vision impairment limited his ability to work around machines, to do some heavy lifting or outdoor work, and to read small print. See Appellant's App. at 96. He said at the hearing that his right eye had been "a lazy eye" since he was a child and that he could see only movement in that eye. Appellant's App. at 198. He further stated that he can only walk without pain on a smooth surface. See id. at 196-97. He said that "a sudden step down or jar" makes his back and leg hurt, id. at 197, and that he got hurt once when he jumped off a loading dock and landed wrong, see id. at 191.

-6-

The ALJ did not address the impact of claimant's vision impairments on his ability to perform work functions, including navigating safely at work. This was error.

We note that the potential ramifications of claimant's vision impairments are significant. The regulations indicate that the extreme lack of acuity in claimant's right eye makes him statutorily blind in that eye. Cf. 20 C.F.R. §§ 404.1581, 416.981. The Merck Manual explains that strabismus is the collective name for a variety of problems with the eye muscles, any of which prevents the affected eye from lining up with the other. See The Merck Manual of Diagnosis and Therapy 2419 (Mark H. Beers, M.D., and Robert Berkow, M.D., eds., 17th ed. 1999). Strabismus may result in loss of vision in the affected eye or may produce diplopia, see id., that is, double vision, see Stedman's Medical Dictionary 489 (Marjory Spraycar ed., 26th ed. 1995). These impairments--lack of acuity and strabismus–surely impair claimant's depth perception as well as the peripheral vision in his right eye, and therefore reasonably could affect his ability to walk and carry things safely in the workplace. Yet, neither of these limitations is addressed by the ALJ. In addition, the ALJ did not address the impact, if any, of claimant's lack of acuity in his left eye on his ability to read. If 20/50 is claimant's best corrected near vision, then claimant's ability to read at work reasonably could be affected. Moreover, claimant reported that his vision was

getting worse, in the same manner as before he had the corneal implants.     See id.

at 123.  There is no evidence in the record from which the ALJ could conclude

that it is not getting worse.  For all of the above reasons, the ramifications of

claimant's vision impairments on his ability to work must be reassessed.

<u>b.  Claimant's RFC:  Physical Demands of Work</u>

In addition, the ALJ was required to assess the "physical demands of work

activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or

other physical functions (including manipulative or postural functions, such as

reaching, handling, stooping or crouching)."  20 C.F.R. §§ 404.1545(b),

416.945(b).  In this regard, the ALJ made findings only on claimant's ability to

walk, sit, lift, and carry, even though claimant's back/hip/leg/arm impairments

would also impact other functions.  Because the ALJ failed to make all of the

physical functional findings implicated by the impairments she accepted as true, it

is impossible to match claimant's RFC with all of the physical functional

demands of his past jobs.

For example, the ALJ made no RFC finding on claimant's ability to

bend/stoop or stand, as required by the regulations.  Yet, the agency recognizes

that "medium work usually requires frequent bending-stooping . . . [and

f]lexibility of . . . the torso is important for this activity."  Social Security Ruling

83-10, 1983 WL 31251, at *6.  "Frequent" is defined as occurring one-third to

two-thirds of the time.   Id.  An RFC assessment from an earlier stage of the proceedings shows that claimant could stoop "occasionally," which is further explained in that assessment to mean less than one-third of the time.  Appellant's App. at 64 (referring back to paragraph A.6. on page 63).  Otherwise, there is no record evidence of claimant's ability to bend, stoop, etc.  Claimant reported on the agency's forms that he was "constantly" bending on his warehouse job because he was loading and unloading trucks,   id. at 92, 106, and that he was "frequently" bending on his janitor job,   id. at 93.

The ALJ also made no finding on claimant's ability to stand, even though he testified that he would stand mostly on his left leg to avoid putting weight on his right leg,  see id. at 197, and she specifically found that he could only walk five or six blocks before taking a break from walking and could only sit for one-half hour before taking a break from sitting,   see id. at 32, 33.  Claimant reported that his janitor and warehouse jobs required six to seven hours of standing and walking per day.   See id. at 92, 93, 106.  That leaves only an hour for sitting each day,   see id. at 92, 93, 106, demonstrating the importance of a finding on his ability to stand.

Several social security rulings reiterate that the ALJ should assess RFC once, in detail, at step four.   See, e.g. , Social Security Ruling 96-9p, 1996 WL 374185, at *2, *5-*9; Social Security Ruling 96-8p, 1996 WL 374184, at *5-*7;

Social Security Ruling 86-8, 1986 WL 68636, at *4-*5. The ALJ's conclusory and incomplete findings in this case are insufficient.

Phase Two:  The Demands of Claimant's Past Relevant Work

Claimant's past work experience qualifies as past relevant work if it was done within the last fifteen years, lasted long enough for him to learn to do it, and earned enough money to be considered substantial gainful activity.          See 20 C.F.R. §§ 404.1565(a), 416.965(a).  The agency recognizes that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."  Social Security Ruling 82-62, 1982 WL 31386, at *3.

The ALJ found that claimant's past relevant work included "warehouse clerk and assistant manager, janitor, railroad worker and work crew leader, equipment cleaner, mover, and laborer."  Appellant's App. at 28.  The ALJ found that his past jobs of "photo lab worker, telephone book stacker, and laborer" did not last long enough to be relevant.     Id.  (The ALJ did not explain why she put laborer in both categories.)

The ALJ then found summarily in the body of her decision that claimant's former jobs as janitor, work crew leader, warehouse clerk, and equipment cleaner did not require him to lift more than fifty pounds, sit for prolonged periods, or

have a high level of visual acuity. <u>See</u> <u>id.</u> at 32. She made no more specific finding in her list of findings. <u>See</u> <u>id.</u> at 33 (finding 7). These findings concerning the functional demands of claimant's past jobs are conclusory and incomplete and cannot be matched to the evidence.

In keeping with the regulations, the agency's own forms asked claimant to identify the amount of walking, standing, sitting, bending, and lifting and carrying he did on his past jobs. <u>See</u> 20 C.F.R. §§ 404.1565(b), 416.965(b); Appellant's App. at 92, 93, 94, 95, 106. The ALJ made no specific findings as to the walking, sitting, or lifting demands of claimant's past jobs, even though she found that he was limited in these functions. As noted above, the ALJ also made no findings regarding the standing or bending required by claimant's past jobs. She also made no findings as to the specific visual demands of claimant's past jobs. The agency's professed "need to know about . . . any . . . physical . . . duties" of the claimant's past jobs, 20 C.F.R. §§ 404.1565(b), 416.965(b), along with the agency's extensive requirements concerning the claimant's RFC, <u>see</u> 20 C.F.R. §§ 404.1545, 416.945, necessarily imply that the ALJ must make corresponding findings as to the demands of claimant's past jobs. In light of these requirements, the ALJ did not make complete findings at phase two.

<u>Phase Three: Matching Claimant's RFC with Demands of Past Jobs</u>

-11-

The ALJ found in the body of her decision that because claimant's past work did not require more than she had decided he could do, he could return to his past jobs of janitor, work crew leader, warehouse clerk, and equipment cleaner. See Appellant's App. at 32. Her finding in the list of findings is the same. See id. at 33 (finding 8).

Because the ALJ's RFC findings were incomplete, however, they cannot be matched with all of the functional demands of claimant's past jobs. Further, because the ALJ's findings as to the demands of claimant's past jobs were conclusory, they cannot be matched to the record. The ALJ's decision therefore contravenes the agency's requirement that "[t]he rationale [for a decision that a claimant can return to past work] must follow an orderly pattern and show clearly how specific evidence leads to a conclusion." Social Security Ruling 82-62, 1982 WL 31386, at *4. Further, the deficiencies in the ALJ's decision cannot be cured by the testimony of the vocational expert (VE). "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted). Neither of the ALJ's hypothetical questions stated "with precision" the walking and vision impairments that she accepted as true

(not to mention any additional impairments to bending/stooping and standing, about which she made no findings at all).

The first hypothetical assumed limitations of lifting no more than fifty pounds and sitting for no more than a half an hour at a time, and elicited a response that claimant could perform all four of the jobs the ALJ identified in her decision. See Appellant's App. at 210. The second hypothetical assumed limitations of lifting no more than fifty pounds, walking for one and a half blocks, and standing for fifteen minutes at a time, and elicited a response that claimant could not do any of the jobs the ALJ found he could do. See id. at 211. The first hypothetical failed to include the walking and vision limitations which the ALJ accepted as true. See id. at 32, 33. The second hypothetical failed to include claimant's sitting and vision impairments at all, and included a more restrictive walking limitation than the ALJ found to be true. The VE's testimony therefore does not constitute substantial evidence. Moreover, because the VE testified that claimant definitely could do some of his past jobs if he had fewer limitations, and definitely could not do any of his past jobs if he had more limitations, there is a real question as to whether a VE would find him able to do any of his past jobs with the limitations the ALJ found to be true.

Because the VE's testimony does not qualify as substantial evidence, the only reviewable evidence concerning the demands of claimant's past work is his

own description of his past jobs in the documentary evidence or in his hearing testimony. The ALJ's errors cannot be cured by comparing the jobs she determined claimant can do with claimant's descriptions of his past jobs.

The ALJ found that claimant can perform his past jobs of janitor, warehouse clerk, work crew leader, and equipment cleaner. On one form, claimant said his janitor job required lifting of twenty-five to fifty pounds. See id. at 93. Elsewhere, claimant said his janitor job required lifting of fifty to eighty pounds, more than the ALJ determined that he can do. See id. at 106. Apart from the lifting requirement, which may be resolved in the ALJ's favor, the ALJ did not explain how claimant could take a break after walking five or six blocks, which she found was his limit, when he reported that his janitor job required six hours of walking per day. See id. The ALJ also did not find out the vision requirements of this job, making it impossible to compare the demands of the job with his ability to see. Moreover, claimant also said the janitor job required frequent bending (stooping), see id. at 93, for which the ALJ made no finding and which the record shows he cannot do, see id. at 64. Therefore, the ALJ's finding that claimant can perform the janitor job is not supported by substantial evidence.

Claimant reported that he frequently lifted over fifty pounds and occasionally up to one hundred pounds on his warehouse job. See id. at 92. This

contradicts the fifty-pound lifting restriction the ALJ specifically found to be true. See id. at 32, 33. The ALJ also did not explain how claimant could take a break after walking five or six blocks, when claimant said the job required six hours of walking per day. See id. at 92, 106. Again, the ALJ did not find out the vision requirements of this job, making it impossible to compare the demands of the job with claimant's ability to see. In addition, claimant said that his warehouse job required constant bending, see id. at 92, 106, for which the ALJ made no finding and which the record shows he cannot do, see id. at 64. The ALJ's finding that claimant can perform his warehouse job is therefore not supported by substantial evidence.

We are unable to determine which description in the record is identified in the ALJ's decision as "equipment cleaner." Although claimant used cleaning equipment on his janitor job, we see no description anywhere in the record of claimant cleaning equipment. Neither the VE nor the ALJ explained what job "equipment cleaner" was. See id. at 28, 32, 33, 210. The ALJ's finding that claimant can perform an equipment cleaner job therefore is not supported by substantial evidence.

We are also unable to match "work crew leader" to a job description. The ALJ addressed "warehouse . . . assistant manager" and "railroad . . . work crew leader" in the body of her decision. Id. at 28. Claimant testified that he had two

-15-

different jobs during his twelve years at the warehouse. He did not describe them separately, however, so there is no description other than that for the warehouse job discussed above to match to the ALJ's RFC findings.    See id. at 92, 106. Claimant's hearing testimony on the point is obviously incomplete, as he said merely that he did paperwork, unlocked the doors, and assigned work.    See id. at 193. Even if that testimony is accepted as complete, claimant would only be able to perform that job if he is allowed to sit and stand at will, and if his vision is adequate for the paperwork involved. The ALJ made no findings to support such a conclusion.

An implied finding that claimant could perform his railroad work crew leader job would be unsupported for similar reasons. He did not report the demands of his supervisory position separately from his job laying track, which is heavier work than he can perform.    See id. at 94. His description of his supervisory job at the hearing was either incomplete or described a sedentary job that he lacks the sitting capacity to perform.    See id. at 194.

### Other

The government maintains that the ALJ's decision is proper because claimant did not provide all of his old medical records or obtain new ones.    See Appellee's Br. at 16-17. This argument fails because the ALJ's decision is shown to be faulty without regard to any issue of missing medical evidence. Moreover,

claimant was unrepresented until after the ALJ issued her decision. The ALJ therefore had a heightened duty to develop the record by obtaining existing medical evidence or additional consultative examinations to ascertain the extent of claimant's impairments.

"It is beyond dispute that the burden to prove disability in a social security case is on the claimant." Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997). Nevertheless, a social security disability hearing is nonadversarial, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993). Generally, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to [her] attention during the course of the hearing." Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996); see also Baker v. Bowen, 886 F.2d 289, 292 (10th Cir. 1989); 20 C.F.R. §§ 404.944, 416.1444. The ALJ has the power to subpoena such records if necessary. See Baker, 886 F.2d at 292; 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1). The ALJ also has the duty to develop the record for impairments which come to her attention during the hearing, such as this claimant's claim of worsening vision. See Carter, 73 F.3d at 1022; Hill v. Sullivan, 924 F.2d 972, 974-75 (10th Cir. 1991). Contrary to the government's suggestion, based on 42 U.S.C. § 423(d)(5)(B) and

20 C.F.R. §§ 404.1512(d), 416.912(d), it is not true that the ALJ need only develop the record for the preceding twelve months. The ALJ must develop the record for "at least" the preceding twelve months. 42 U.S.C. § 423(d)(5)(B), 20 C.F.R. §§ 404.1512(d), 416.912(d). The agency expressly requires "[t]he adjudicator [to] consider all allegations of physical . . . limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC," without qualification as to time. Social Security Ruling 96-8p, 1996 WL 374184, at *5.

Claimant reported in September 1993 that he had been examined by his eye surgeon, Dr. W. Stanley Muenzler, every six months since his corneal surgery in the mid-1980's. See Appellant's App. at 102. He has not been examined recently by an ophthalmologist because he ran out of money and medical insurance in mid-1992 when he lost his job. See id. at 109, 112, 123, 207-08. Dr. Muenzler's records are not in the administrative record. In fact, few of claimant's own medical records are in the administrative record, even though claimant provided the agency the names and addresses of his last employer, his doctors, and a hospital which had records on him, see id. at 102, 103, 104, 106, 125, he expressed a need for help in getting them, see id. at 106, and he was unrepresented at the hearing. Under our case law, the ALJ should have attempted

-18-

to obtain claimant's records. And, because claimant's allegation of worsening vision was uncontroverted, she should have ordered a consultative examination.

To the extent that the government argues that claimant should be faulted for his failure to pursue medical treatment, we note that the ALJ made no findings relevant to this argument. Claimant repeatedly stated that he lacked money or insurance to pay for doctors. The regulations allow the agency to deny benefits to a claimant who does not follow prescribed treatment without a "good reason." 20 C.F.R. §§ 404.1530(b), 416.930(b). This court therefore long ago adopted a four-part test to assess a claimant's failure to pursue treatment: (1) whether treatment would have restored the claimant's ability to work; (2) whether treatment was prescribed; (3) whether treatment was refused; and (4) whether the excuse was justified. See Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). Inability to pay for treatment may justify failure to pursue treatment. See Thompson v. Sullivan, 987 F.2d 1482, 1489-90 (10th Cir. 1993); Baker, 886 F.2d at 292.

The record supports claimant's contention that he has no funds to pay doctors. He applied for Medicare, but was told that he could not get Medicare or Medicaid benefits until after his social security claim was decided. See Appellant's App. at 123, 208. He cannot apply for worker's compensation, because he was not injured at work. See id. at 208. He said that he goes to the

emergency room for treatment, because the doctors there do not turn him away even though he does not pay his bills. See id. at 109, 112, 207-08. The emergency room doctors, however, give him only temporary relief from pain, see id. at 112, tell him to stay off his leg for a few days, see id. at 104, 109, 112, and refer him to his own physician, see id. at 109, 112, 207. Claimant said that he has no doctor to write a prescription for pain medication, see id. at 122, and that he has been told that surgery would not help, see id. at 182.

## Conclusion

The ALJ's findings in this case are conclusory and incomplete and do not show how the evidence supports her conclusion that claimant can return to any of his past jobs. The ALJ's decision also conflicts with this court's statement that conclusory findings at step four do not provide for meaningful judicial review. See Winfrey, 92 F.3d at 1025.

The judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the case is REMANDED to the district court with directions to remand to the agency for additional proceedings.

Entered for the Court

David M. Ebel

-20-

Circuit Judge