**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHANNON GARDNER-RENFRO,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 00-6077
(D.C. No. 98-CV-697)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Shannon Gardner-Renfro appeals the district court's affirmance of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. Because the Commissioner's decision is supported by substantial evidence and no legal errors occurred, we affirm.

Plaintiff was born in 1970 and has a high school education plus vocational training as a beautician. She has worked as a secretary, bank teller, tour guide, and a cashier/general office clerk. She filed an application for disability benefits on February 6, 1991, claiming she was unable to work after December 11, 1990, due to the combined effects of chronic fatigue syndrome and dysthymia, a mild form of depression. A hearing was held in December 1991 before an administrative law judge (ALJ) who found that plaintiff was not disabled at step four because she could still perform her past work. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (outlining five-step sequential process for determining disability). The Appeals Council affirmed, and plaintiff appealed in federal district court.

In 1994, the district court remanded plaintiff's case for further consideration, stating that:

On remand, the ALJ must proceed to step five to determine whether [plaintiff] can return to work elsewhere in the national economy. As part of the remand, the ALJ must order an examination of [plaintiff] by a consulting specialist in the area of Chronic Fatigue Syndrome. In addition, the ALJ must re-evaluate his examination of the evidence of Drs. Soto and Anderson[, plaintiff's treating physicians,] in light of this opinion. The ALJ must also conduct a supplemental hearing where a Vocational Expert and the consulting specialist can testify, considering the whole of the newly found medical evidence and testimony, above.

Appellant's App., Vol. II at 426-27.

On remand, plaintiff was examined by Dr. Susan Dimick, a board certified specialist in internal medicine. The ALJ conducted a second de novo administrative hearing at which plaintiff, Dr. Dimick, and a vocational expert (VE) testified. In her report, Dr. Dimick opined that plaintiff met none of the criteria established by the Center for Disease Control for a diagnosis of chronic fatigue syndrome. *Id.* at 478. Dr. Dimick also opined that plaintiff had received "very bizarre" and "very unconventional" and "unorthodox" treatment from her treating physicians. *Id*. at 472.

Dr. Dimick performed a medical assessment of plaintiff's ability to work-related activities and concluded that plaintiff had no limitations in lifting/carrying, standing/walking, or sitting; had no limitations in any of her postural activities, such as climbing, stooping or crouching; no limitations in any of her physical functions, such as reaching, handling, fingering, or pushing; and had no environmental restrictions. *Id*. at 481-82. Dr. Dimick did note that

plaintiff exhibited possible signs of fibromyalgia or Raynauld's syndrome, and believed that plaintiff should undergo an immunological profile. *Id*. at 478-79. Following the hearing, but prior to the ALJ's decision, plaintiff was also examined by a consulting psychologist, Dr. Hickman, who found no evidence of any organic mental disorder, very mild language-based learning disability and undifferentiated somatoform disorder. Dr. Hickman opined that plaintiff's ability to make occupational, performance, and personal-social adjustments was good or very good in all areas.

The ALJ issued a decision in April 1996, concluding that plaintiff was not disabled at step four. The Appeals Council remanded the case, however, because, contrary to the district court's remand order, the ALJ had failed to proceed to step five. The Appeals Council directed the ALJ to proceed to step five, obtain further medical evidence from a rheumatologist and, if warranted, obtain further vocational evidence. *Id.* at 565.

On remand, plaintiff was examined by Dr. Raymond Dougherty, a board certified specialist in internal medicine. Dr. Dougherty's report indicated that physical findings did not support plaintiff's claims of fatigue, joint and muscle pain. *Id.* at 584. He reported that plaintiff had a full range of motion of all joints and completely normal findings of her back. *Id*. at 585-88. He reported that plaintiff described being able to perform light housework and was taking only

Premarin and occasional pain and nerve medicine. In addition, Dr. James Lowell, also a board certified specialist in internal medicine, reviewed plaintiff's medical records. The ALJ held a third de novo administrative hearing in October 1997 at which plaintiff, Dr. Lowell and a VE testified.

In November 1997, the ALJ concluded at step five of the sequential analysis that plaintiff was not disabled because she retained the residual functional capacity (RFC) to perform jobs existing in significant numbers in the local and national economies. The Appeals Council affirmed, making it the Commissioner's final decision.

On appeal, plaintiff argues that the ALJ (1) breached his duty to develop the record by refusing to obtain a consultative examination by a specialist as ordered by the district court and the Appeals Council; and (2) failed to apply properly the step five burden of proof by substituting his opinion of the medical evidence, relying instead on his credibility determination to support his step five denial. In a detailed and thoughtful report and recommendation, the magistrate judge addressed plaintiff's issues and rejected her arguments. The district court affirmed the decision of the Commissioner based upon the magistrate judge's report and recommendation. We have reviewed the record as a whole to determine whether the Commissioner's findings are supported by substantial

evidence and whether he applied the correct legal standards. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

### Development of the Record

An ALJ has a responsibility in the nonadversarial social security setting "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). This responsibility to develop the record may require the ALJ to order a consultative examination. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).

Plaintiff claims the ALJ erred in not obtaining a consultative examination from a specialist in rheumatology, as recommended by Dr. Dimick and as ordered by the Appeals Council. We conclude that the ALJ did not fail to comply with the remand instructions of the district court or the Appeals Council. Following the Appeals Council's 1997 remand order, the ALJ explained that he was unable to obtain a consultative examination from a rheumatologist through the disability determination office in plaintiff's state. Thus, he substituted a consultative examination by a board certified internist, Dr. Dougherty, and called on Dr. Lowell, also a board certified internist, to testify. The Appeals Council concluded that the ALJ "did his utmost to follow the Council's remand order and

. . . that the consultative examination obtained and the further medical expert testimony obtained, does satisfy the directives in the Council's remand order." Appellant's App. Vol. II at 337.

Plaintiff contends that the district court directed that she be examined by a rheumatology specialist. Appellant's Br. at 25. This misrepresents the district court's remand order. The district court ordered that she be examined by a specialist in chronic fatigue syndrome, not by a rheumatologist. The ALJ appropriately complied with the district court's remand order in obtaining medical evaluations with respect to chronic fatigue syndrome. Dr. Lowell testified that he did not know of a speciality in chronic fatigue syndrome and that a specialist in internal medicine was qualified to evaluate chronic fatigue syndrome. Plaintiff was evaluated by three internists, Drs. Dimick, Dougherty and Lowell. Dr. Dougherty found no limitations in plaintiff's exertional activities, postural activities, physical functions, or environmental restrictions. Dr. Dimick opined that plaintiff did not meet the criteria for chronic fatigue syndrome and Dr. Lowell agreed with her conclusion.

The ALJ's inability to obtain a consultative examination from a rheumatology specialist did not violate his duty to develop the record. As noted, Dr. Dougherty determined that plaintiff did not have any restrictions in her exertional activities, postural activities, physical functions, or environmental

restrictions.  This report was consistent with the medical opinions of Drs. Dimick and Lowell.  Dr. Lowell reviewed plaintiff's medical record and testified that it was complete and that there were not inconsistencies in the record requiring that further medical evidence be obtained.  The ALJ considered all of the medical evidence, and concluded that further medical evaluations were not warranted.  "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning.  The standard is one of reasonable good judgment."   *Hawkins* , 113 F.3d at 1168 (citation omitted).

It is true that none of the internists performed any tests related to fibromyalgia or Raynaud's syndrome, as suggested by Dr. Dimick.  However, an individual is not considered to be disabled under the Social Security Act unless her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, as pointed out by the district court, "the operative question for disability benefits under the Act is whether [p]laintiff experiences functional limitations due to her impairments."  Appellant's App., Vol. I at 21.  Regardless of whether plaintiff could have been diagnosed with a particular medical condition, none of the consultative physicians found her to have functional

impairments which precluded the performance of all work during the relevant period.  Under these circumstances, the ALJ was not required to seek further medical opinions or consultative examinations.

Plaintiff contends that even if the ALJ had good cause to not obtain a consultative examination from a rheumatologist, he erred in failing to provide Dr. Dougherty with all of plaintiff's prior medical records.  Our review of the record shows that Dr. Dougherty's report was prepared based on a thorough examination of plaintiff and a sufficient understanding of her medical history to render the report legally sufficient.     *See id*. Vol. II at 582-92.  Moreover, the ALJ also obtained a report from a third internist, Dr. Lowell, who did review all of plaintiff's medical records.     *Id*. at 398.

Plaintiff contends that the tone of the ALJ's questioning and his refusal to follow the dictates of the Appeals Council and the district court demonstrate an obvious bias against her and her counsel, preventing her from obtaining a full and fair hearing.  As noted above, the ALJ substantially complied with the appellate remand orders.  We conclude from our review of the record, read in full and in context, that the ALJ provided plaintiff with a full and fair opportunity to develop the record and did not exhibit bias against her.

## Step Five Determination

Plaintiff next contends the ALJ failed to apply properly the step five burden of proof by substituting his personal opinion for medical evidence and relying on his determination that plaintiff's subjective complaints lacked credibility. At step five, the burden is on the agency to show that a claimant retains the RFC to perform work that exists in the national economy. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). Plaintiff contends that, while the ALJ may have been within his province to reject her testimony of disabling pain, this credibility determination is not dispositive at step five because he failed to point to affirmative evidence that she could work on a regular basis and maintain employment. Plaintiff claims, erroneously, that the ALJ relied solely on the testimony of Dr. Lowell in making his step five determination, which she claims was insufficient because Dr. Lowell did not examine plaintiff or give an opinion as to her functional limitations.

Contrary to plaintiff's contention, the record and the ALJ's decision demonstrate that the ALJ did not rely solely on Dr. Lowell's opinion, but considered the totality of the evidence presented in making his step five determination. The ALJ's determination that plaintiff had the RFC to perform work is supported by numerous medical assessments of her physical ability to work as well as assessments of her mental ability to work, and by the testimony of

the VE, as fully detailed in the magistrate judge's report and recommendation. This is not a case in which the absence of evidence is made to serve as substantial evidence to meet the Commissioner's burden at step five, *cf. Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).

Plaintiff also complains that the ALJ should have given more weight to Dr. Dimick's recommendation that she be evaluated by a rheumatologist than to Dr. Lowell's opinion that no further medical examination was necessary. The ALJ has the duty to weigh evidence and resolve any evidentiary conflicts, however, and we will not reweigh the evidence. *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000). Plaintiff claims that the ALJ should at least have explained why he rejected Dr. Dimick's testimony that plaintiff would not be able to work with her extreme fatigue and pain. This misstates Dr. Dimick's testimony, who stated in her report only that plaintiff *reported* being physically too fatigued and in too much pain to work. Appellant's App., Vol. II at 480. The ALJ properly evaluated plaintiff's allegations of disabling fatigue and pain and his credibility determination was supported by substantial evidence.

We conclude that the agency applied the correct legal standards and that substantial evidence supports the agency's decision.  Thus, we AFFIRM the judgment of the United States District Court for the Western District of Oklahoma.

Entered for the Court

David M. Ebel
Circuit Judge