**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DANNY R. NORRIS,

      Plaintiff - Appellant,

  v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant - Appellee.

No. 05-7002
(D.C. No. CIV-03-625-WH)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **EBEL**, **HARTZ**, and **McCONNELL**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Danny R. Norris appeals from an order of the district court affirming the Social Security Commissioner's decision denying his applications for disability insurance benefits and supplemental security income benefits under the Social Security Act. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

## I.

Plaintiff claims that he "has been disabled since October 18, 1991 due to chronic neck and arm pain." Aplt. Br. at 5. Plaintiff has also filed an application for benefits based on an alleged onset date of March 16, 2001, however, and the ALJ summarized Plaintiff's filing history as follows:

> The claimant filed an application for Supplemental Security Income payments previously on September 12, 1990, alleging onset of disability beginning February 26, 1990. That application was denied on January 16, 1991. The claimant filed his second application for Supplemental Security Income on February 8, 2002, alleging onset [of] disability beginning October 18, 1991. That application was denied initially and upon reconsideration on October 4, 2002. Claimant requested a hearing. In the interim, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income payments on June 11, 2002, . . . alleging onset of disability beginning March 16, 2001. The claims were denied initially and on reconsideration, and a request for hearing was timely filed. The current applications were consolidated for hearing with the prior February 8, 2002 application for Supplemental Security Income. The claimant appeared and testified at a hearing held on February 4, 2003 . . . .

Aplt. App., Tab 4 at 23.

In a decision dated June 4, 2003, the administrative law judge (ALJ) found that Plaintiff suffers from degenerative disc disease of the cervical spine, and the ALJ determined at step two of the five-step sequential evaluation process for determining disability that Plaintiff's condition is a severe impairment. In addition, the ALJ found at step four of the evaluation process that Plaintiff's problems with his cervical spine prevented him from performing his past relevant work as a truck driver. But the ALJ denied Plaintiff's applications for benefits at step five of the evaluation process, concluding that (1) Plaintiff retained the residual functional capacity (RFC) to perform a significant range of light work; and (2) there are a significant number of jobs in the national economy that Plaintiff can perform.

In September 2003 the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. In December 2004 the district court entered an order and related judgment affirming the denial of Plaintiff's applications for benefits. This appeal followed.

**II.**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the

-3-

agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

In this appeal Plaintiff claims that the ALJ's decision must be reversed because (1) the ALJ failed to develop the administrative record properly; (2) the ALJ failed to assess Plaintiff's credibility properly; and (3) the ALJ failed to assess Plaintiff's RFC properly. These claims are without merit.

**A. Medical Evidence in the Administrative Record.**

As set forth above, Plaintiff claims that he initially became disabled in October 1991 as a result of the problems with his cervical spine. But the only medical evidence in the administrative record pertains to medical treatment that Plaintiff received following a work-related accident on March 16, 2001. Specifically, as accurately summarized by the magistrate judge, the administrative record shows the following:

> The evidence considered by the ALJ reveals that claimant was involved in a work-related accident while driving a log truck on March 16, 2001. He was admitted to Wadley Regional Medical Center on that day with multiple abrasions and contusions and headache, but neurologically he was sound and there were no complaints of any tenderness in the neck or arms. Claimant's X rays showed a negative portable two view examination of the cervical spine and thoracic spine and the X ray of claimant's lumbar spine revealed degenerative disc disease at the L5-S1 level with associated mild anterolisthesis and suspected spondylolysis. A CT of claimant's

-4-

head showed a thickening of the sphenoid and ethmoid sinuses which could have been related to the trauma claimant suffered or chronic inflammatory disease. Claimant returned to the hospital on March 22, 2001, complaining of neck pain and tingling down the right arm. A CT taken of the cervical spine was normal. Claimant was diagnosed with cervical strain. Claimant returned on April 9, 2001, to undergo an MRI of the cervical spine which indicated central disc protrusion at the C6-7 level with mild associated spinal canal stenosis but was otherwise unremarkable.

Claimant began seeing orthopedist Dr. Odor in April 2001. Claimant's chief complaint was neck pain with radiation down the right shoulder and arm. Claimant indicated his pain was not getting better and he was unable to work. Upon examination, Dr. Odor noted claimant's limited cervical motion secondary to pain and weakness of the right triceps when compared to the left. He stated there was some numbness in the right C-7 distribution and mild cervical spasm, reflexes were symmetric, and there were no upper motor neuron signs. He reviewed the MRI and observed mild cord compression and mild to moderate compression of the right C-7 nerve root. He assessed claimant with cervical disc herniation at C6-7 with right C-7 radiculopathy. When claimant returned in June 2001, Dr. Odor indicated in progress notes that he was doing worse and had ongoing pain down his right arm. Dr. Odor recommended surgery for a herniated disc since claimant had failed to respond to conservative care. Claimant underwent cervical microscopic discetomy at C6-7, anterior cervical interbody fusion with radial ring Allograft and demineralized bone matrix, and anterior spinal instrumentation with cervical spine locking plate Synthes C6-7 on July 17, 2001. He returned for a follow-up appointment on August 23, 2001, and Dr. Odor noted he was progressing well. He stated that claimant's arm pain had completely resolved, but he did still experience occasional muscle spasms which Dr. Odor considered normal. Dr. Odor recommended claimant begin a physical therapy program two times per week for six weeks. In October 2001 claimant again reported to Dr. Odor that his arm pain was completely resolved and his arms felt stronger and were without any numbness or tingling. Although he still had some soreness in his neck and his graft did not appear to be completely consolidated, X rays showed that the C6-7 level was stable without movement. Dr. Odor recommended that

claimant increase his activities and return to work with instructions to avoid overhead straining. Claimant returned to Dr. Odor in January 2002, and he was found to be doing very well. Although claimant occasionally had symptoms in the back of his neck, he felt much better than before surgery and his X rays showed his fusion was solid. Dr. Odor found claimant's range of motion to be good and he had a normal neurological examination. He released claimant from further care and noted that he could return to work with instructions to avoid repetitive overhead lifting.

Aplt. App., Tab 7 at 212-14 (citations omitted); *see also id.*, Tab 4 at 134-35, 140-45.

## B. Development of the Administrative Record.

"[U]nlike the typical judicial proceeding, a social security disability hearing is nonadversarial, with the ALJ responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (internal citation and quotation marks omitted). In particular, in appropriate cases, the ALJ may have a duty to order a consultative medical examination. As we have explained,

> The difficult issue presented here, where the charge is that the ALJ has failed to develop the record by not obtaining a consultative examination, is to decide what quantum of evidence a claimant must establish of a disabling impairment . . . before the ALJ will be required to look further. We begin by acknowledging that the [ALJ] has broad latitude in ordering consultative examinations. *See Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, *see* 20 C.F.R.

-6-

§ 404.1519a(b)(4), or where the medical evidence in the record is inconclusive, *see Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993), a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary.

*Hawkins*, 113 F.3d at 1166.

We have also made clear, however, that "the burden to prove disability in a social security case is on the claimant." *Id.* at 1164. As a result, the claimant always has the initial burden of proof.

Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.

*Id.* at 1167 (citations omitted).

In this appeal Plaintiff has put forth three arguments in support of his claim that the ALJ failed to develop the administrative record properly. First, Plaintiff claims that the administrative record was deficient because the abnormalities detected in his lumbar spine and sinuses "were never fully evaluated by the Agency physician or the ALJ." Aplt. Br. at 10. Second, he claims that the administrative record was deficient because "[t]here are no range of motion studies included in the record." *Id.* Third, he claims that "the transcript of the

hearing reflects that the ALJ agreed that [Plaintiff] should undergo a consultative examination," but "[n]o such examination was ever conducted." *Id.* at 10-11. We reject the claim that the ALJ failed to develop the administrative record properly.

To begin with, as pointed out by the magistrate judge,

> the only impairments claimant raised in his application for benefits were neck and arm pain; he did not make any complaints related to the abnormalities [detected in his lumbar spine and sinuses] to Dr. Odor, and he provided no testimony at the hearing about the abnormalities or that they functionally limited him in any way.

Aplt. App., Tab 7 at 215. Consequently, Plaintiff failed to meet his initial burden of showing that there are substantial issues related to the abnormalities detected in his lumbar spine and sinuses, and we therefore conclude that the ALJ had no duty to investigate those conditions further. *See Hawkins*, 113 F.3d at 1167.

We also reject Plaintiff's claim that the administrative record was deficient because it did not contain range-of-motion studies regarding his ability to move his neck. The magistrate judge noted that

> contrary to claimant's testimony that Dr. Odor never evaluated his range of motion during his examinations, the last treatment note from Dr. Odor from January 2002 indicated that claimant had a good range of motion and a normal neurological examination and he could be released to work with only a restriction from engaging in repetitive overhead lifting.

Aplt. App., Tab 7 at 215 (citations omitted). In addition, the ALJ found that Plaintiff's hearing testimony was not "entirely credible," *id.*, Tab 4 at 28, and, as set forth below, we have determined that the ALJ's credibility finding is

supported by substantial evidence in the record. As a result, Plaintiff's hearing testimony to the effect that Dr. Odor did not evaluate his range of motion was properly rejected by the ALJ, and the ALJ did not err in accepting Dr. Odor's statement that Plaintiff had good range of motion. We also note that the ALJ did not completely discount Plaintiff's claim that he has limited range of motion, as the ALJ found that Plaintiff was incapable of performing work that required "more than occasional side to side movements of the head." *Id.* at 29.

Finally, "[e]ven though the record indicates claimant's attorney requested a consultative examination at the hearing and the ALJ agreed to order it," *id.*, Tab 7 at 215, we agree with the magistrate judge that "the examination's absence from the record suggests that the ALJ reconsidered the request after the hearing and determined the examination was not necessary based on the evidence of record." *Id.* We also agree with the magistrate judge that the absence of a consultative orthopedic examination did not render the administrative record deficient.

As summarized above, the medical evidence in the administrative record shows that (1) Plaintiff suffered a work-related injury to his cervical spine in March 2001; (2) his treating orthopedic surgeon, Dr. Odor, diagnosed him as suffering from a herniated cervical disc with right radiculopathy; (3) he subsequently failed to respond to conservative care; (4) Dr. Odor performed surgery on his cervical spine in July 2001; and (5) in January 2002, Dr. Odor

-9-

released him from further care based on the determination that he had reached maximum medical improvement and could return to work with instructions to avoid repetitive overhead lifting. Further, as noted by the ALJ, Plaintiff "has not submitted any medical records pertaining to any medical treatment after he was last seen by Dr. Odor in January 2002." *Id.* at 27. Given this record, the ALJ did not err in failing to order a consultative orthopedic examination. Simply put, there was no direct conflict in the medical evidence requiring resolution; the medical evidence in the record was not inconclusive; and additional tests were not required to explain a diagnosis already contained in the record. *See Hawkins*, 113 F.3d at 1166.

## C. Plaintiff's Credibility.

In his brief on appeal, Plaintiff claims that "the ALJ's conclusions regarding credibility based on [Plaintiff's] loss of his commercial driver's license, lack of medical treatment and multiple applications for benefits are neither rational nor supported by a substantial amount of evidence." Aplt. Br. at 16. We disagree, and we adopt the following analysis of the magistrate judge:

> Although the undersigned Magistrate Judge would agree with claimant that there is nothing in the record to support the ALJ's presumption that claimant lost his commercial driver's license because of a driving offense, the ALJ relied on numerous other reasons for finding claimant's complaints not credible. The ALJ's consideration of claimant's lack of ongoing medical treatment was appropriate, as was his consideration of claimant's taking aspirin for pain relief and the inconsistency between claimant's testimony

-10-

regarding arm and neck pain and his reports to Dr. Odor that his pain had resolved. Further, the ALJ properly considered claimant's work history as part of the credibility analysis, and the inconsistencies in claimant's testimony and between his testimony and the medical evidence. The ALJ linked his findings to the evidence in the record . . . and cited evidence from the record in support of his determination that claimant's impairment was not as severe as alleged and did not keep claimant from performing work. Because there is no indication that the ALJ misread the medical evidence as a whole, deference must be given to the ALJ's determination of the claimant's credibility.

Aplt. App., Tab 7 at 219-20 (citations omitted).

## D. The ALJ's RFC Determination.

Plaintiff's brief on appeal argues that the ALJ's RFC determination must be reversed because "the ALJ failed to properly weigh the opinions of [Plaintiff's] examining physicians, failed to fully document the record by obtaining a consultative examination, . . . and improperly discounted [Plaintiff's] subjective complaints of pain." Aplt. Br. at 13-14. Plaintiff also argues that "the record does not contain sufficient medical evidence to support any kind of conclusion as to [Plaintiff's] abilities or limitations." *Id.* at 14. As set forth above, we have rejected Plaintiff's claims regarding a consultative medical examination and the ALJ's credibility analysis. For similar reasons, we also conclude that Dr. Odor's medical records, when considered along with the undisputed fact that Plaintiff has not received any relevant medical treatment since he was last seen by Dr. Odor in

-11-

January 2002, provided a sufficient medical basis for the ALJ's finding that Plaintiff retains the RFC to perform a significant range of light work.

The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge